OPINION
{¶ 1} This is an appeal from a summary judgment on a breach of contract claim.
 {¶ 2} Plaintiff-Appellant, James L. Caplinger, was employed as City Manager of the City of New Carlisle ("New Carlisle") beginning in 1997 until he resigned his position in July of 2003. Subsequently, on December 6, 2005, Caplinger *Page 2 
commenced an action against New Carlisle on a breach of contract claim.
 {¶ 3} Caplinger's complaint alleges that New Carlisle agreed to pay him for forty days of unused vacation time plus one holiday day, and failed to do that. Caplinger asked for money damages of $9,852.90 for the amount he is due, plus interest. New Carlisle filed an answer denying the claim, and it subsequently moved for summary judgment on Caplinger's claim for relief.
 {¶ 4} In its motion for summary judgment, New Carlisle, while not conceding that it had agreed to pay Caplinger as alleged, argued that any such agreement, even if proved, is unenforceable. New Carlisle contended that, as a charter city, and pursuant to its City Charter, any such obligation can be assumed only by an ordinance adopted by its City Council in open session, and that no such ordinance was adopted.
 {¶ 5} Caplinger filed a combined memorandum in opposition to New Carlisle's motion for summary judgment and his own cross-motion for summary judgment. Caplinger's motion was supported by his own affidavit and an affidavit of his attorney. Both affidavits attached copies of documents.
 {¶ 6} In his affidavit, Caplinger averred that on June 13, *Page 3 
2003, he submitted a memorandum to New Carlisle's mayor and City Council, offering his resignation as city manager, effective no earlier than July 11, 2003 and no later than the end of that month. The memorandum, a copy of which is attached to Caplinger's affidavit, states: "Of course, I have accumulated vacation and sick leave which will cause me to be paid through September or so. I shall calculate that later." (Exhibit A).
 {¶ 7} Caplinger's affidavit states that he met with the Mayor and City Council members on June 16, 2003, when it was agreed that his last day of work would be July 11, 2003. Subsequently, on June 23, 2003, a further discussion was held, in which Caplinger presented his claim for forty days unpaid vacation. Caplinger's affidavit further states:
 {¶ 8} "6. Council wanted to appoint an Interim City Manager. I offered to convert my status to a consultant to the City Manager so this appointment could occur, if we all agreed to the terms of my resignation. There was common consent among Council to accept the terms of my resignation, including my analysis and accumulation of vacation pay, and to appoint Mr. Bender as interim City Manager. I asked each Council member independently if they agreed to this arrangement, to which they responded `yes' or nodded *Page 4 
affirmatively. I then asked if anyone had a problem with the arrangement, and each of them either said `no' or shook their head in such a way to indicate no. I then indicated that I would reduce the agreement to writing the next day."
 {¶ 9} Caplinger's affidavit further avers that on the following day, June 24, 2003, he submitted another written memorandum, detailing the basis of his claim for the forty days unpaid vacation leave he is due. A copy of the memorandum is attached to Caplinger's affidavit as Exhibit B. Caplinger states that shortly before his last day of work on July 11, 2003, the interim city manager met with him "and said Council was changing its arrangement with me" and would pay for only eleven days of unpaid vacation time instead of forty. A copy of New Carlisle's letter dated July 11, 2003, itemizing its offer is attached to Caplinger's affidavit as Exhibit C.
 {¶ 10} Caplinger's attorney submitted an affidavit, attaching copies of the minutes of meetings of the New Carlisle City Council she states were provided to her by the City's attorney. Exhibit C is the minutes of the Council's meeting of July 21, 2003, indicating that on that date Council voted "to accept James Caplinger's resignation effective July 11, 2003, per his letter to Council of June 13, 2003." *Page 5 
 {¶ 11} New Carlisle filed a memorandum in opposition to Caplinger's motion for summary judgment. New Carlisle renewed its argument that any agreement would be unenforceable for lack of a proper ordinance. New Carlisle also contended that no agreement was reached concerning Caplinger's claim for unpaid vacation pay. Attached to its memorandum is an affidavit of New Carlisle's mayor and member of New Carlisle's City Council, Paul Shakro, who averred:
 {¶ 12} "2. On or about June 13, 2003, then New Carlisle City Manager James L. Caplinger (`Caplinger') distributed to the members of City council a Memorandum announcing his resignation as City manager effective sometime between July 11 and July 31, 2003.
 {¶ 13} "3. At the next regularly scheduled meeting of the New Carlisle City Council on June 16, 2003, Caplinger's last date of employment was discussed in executive session, but Council took no official action regarding the position of City Manager in regular session.
 {¶ 14} "4. On June 23, 2003, the New Carlisle City Council held a special meeting. When an executive session of Council was convened, Council and Caplinger discussed Caplinger's resignation. In the course of this discussion, Caplinger told Council that he was entitled to accrued vacation pay pursuant *Page 6 
to § 246.11 of the City's Codified Ordinances, which provides for up to eight (8) weeks of accrued vacation for City employees other than the City Manager. Caplinger did not mention § 220.04(d) which specifically limits the vacation pay accrual for the City Manager to twenty (20) days. The only response made by anyone present was by a council member to the effect that Caplinger would receive whatever vacation pay he was entitled to. No member of council discussed or made any promises or representations regarding how many hours of vacation pay Caplinger would be paid. After this discussion Council reconvened in regular session and duly voted to unanimously appoint Robert Bender as Acting City Manager effective June 24, 2003.
 {¶ 15} "5. At a regular meeting of the City Council held on July 21, 2003, Council voted unanimously to accept Caplinger's resignation effective July 11, 2003 per his Memorandum of June 13, 2003.
 {¶ 16} "6. At no time did Council, either formally in regular session or informally in executive session, agree to pay to Caplinger eight (8) weeks of vacation pay upon his termination, to pay him pursuant to New Carlisle Codified Ordinance § 246.11, or to pay him any amount of vacation pay contrary to § 220.04(d)." *Page 7 
 {¶ 17} The trial court rendered its judgment on the competing motions for summary judgment on May 25, 2007. The court rejected New Carlisle's argument that Caplinger's breach of contract claim is unenforceable pursuant to statutes and ordinances governing New Carlisle's acts as a charter city. However, the court granted New Carlisle's motion for summary judgment on the following rationale:
 {¶ 18} "Taking the best evidence for Plaintiff's argument, there is a claim for 40 days accrued vacation pay. Through the documents, the only mention of that figure is by Plaintiff, not contradicted, but never corroborated by Defendant. That is, until the July 11th
memo, when Defendant makes it clear that there is no agreement with Plaintiff as to the 40-day figure.
 {¶ 19} "Plaintiff's bare assertions without independent corroboration are not persuasive. Clearly, Defendant Council did not take any action regarding details of Plaintiff's severance until July 11th.
 {¶ 20} "Until then, there can be no showing of a meeting of the minds as to any detail regarding vacation pay. Not only can Plaintiff not prevail with its motion for Summary Judgment, but the Court is compelled to grant Defendant's motion for Summary Judgment as to all claims made by *Page 8 
Plaintiff, James L. Caplinger, since Plaintiff cannot establish that an enforceable severance agreement existed and/or was breached by Defendant." (Dkt. 43).
 {¶ 21} Caplinger filed a timely notice of appeal
ASSIGNMENT OF ERROR
 {¶ 22} "THE TRIAL COURT ERRED IN ITS APPLICATION OF THE SUMMARY JUDGMENT RULE IN ITS DECISION TO DENY CAPLINGER HIS MOTION FOR SUMMARY JUDGMENT AND GRANT THE CITY OF NEW CARLISLE SUMMARY JUDGMENT."
 {¶ 23} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morris v. First NationalBank Trust Co. (1970), 21 Ohio St.2d 25. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v.Lyles (1992), 63 Ohio St.3d 326.
 {¶ 24} When reviewing a trial court's grant of summary *Page 9 
judgment, an appellate court conducts a de novo review. Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City SchoolsBd. Of Edn. (1997), 122 Ohio App.3d 378, 383, citing Dupler v. MansfieldJournal Co., 64 Ohio St.2d 116, 119-120, 1992-Ohio-106. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. Scioto Cty. Bd. Of Commrs. (1993),87 Ohio App.3d 704, 711.
 {¶ 25} Civ.R. 56(B) authorizes a party against whom a claim for relief is asserted to move for summary judgment "in the party's favor as to all or any part of the claim." The movant bears the initial burden of informing the court of the basis of the motion and identifying portions of the record which support the claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107; Vahila v. Hall, 77 Ohio St.3d 421, 1997-Ohio-259.
 {¶ 26} "A party seeking summary judgment must specifically delineate the basis for [the motion] in order to permit the opposing party the opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,116. We have held that if a party files a motion based on some, but not all, issues in a *Page 10 
case, the trial court should restrict its ruling to those matters raised. Ferro Corp. v. Blair Knox Food Equip. Co. (1997),121 Ohio App. 3d 434. It is reversible error to award summary judgment on grounds not specified in the motion for summary judgment. Patterson v.Ahmed, Lucas App. No. L-07-1142, 2008-Ohio-362, ¶ 14.
 {¶ 27} The basis for the motion for summary judgment that New Carlisle filed is that Caplinger's alleged breach of contract claim is unenforceable against New Carlisle because, as a charter city and pursuant to its own City Charter, New Carlisle cannot undertake to pay an obligation absent a proper enabling ordinance. New Carlisle did not contend, except in opposition to Caplinger's motion for summary judgment, that no agreement between it and Caplinger concerning payment of his unused leave was reached.
 {¶ 28} Had the court found reason to overrule Caplinger's own motion, either because its basis lacks merit in relation to his claim for relief or because the record does not support the basis for relief cited in his motion, the court would necessarily deny the summary judgment for Caplinger that his motion sought. The court could not instead grant the motion New Carlisle filed on that same account, when New Carlisle's motion did not rely on that same basis in law and fact. Doing *Page 11 
so awards summary judgment on grounds not specified by the movant, and is reversible error. Patterson v. Ahmed.
 {¶ 29} Nevertheless, and anticipating that the same result would obtain upon a remand should New Carlisle file a proper motion, we will go on to address the finding the court made vis-a-vis the existence or non-existence of an agreement between Caplinger and New Carlisle.
 {¶ 30} In ruling on a motion filed pursuant to Civ.R. 56, the court neither weighs the evidence nor determines the credibility of the affiants. Steele v. Auburn Vocational School Dist. (1994),104 Ohio App.3d 204. Neither does the court determine the facts. McGee v.Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236. The court merely determines whether there is a genuine issue as to a material fact on which a claim or defense depends. Procaccino v. Elberon Bldg LoanAss'n. (1969), 20 Ohio App.2d 105. The court evaluates the evidence in relation to that standard, and in doing so must view the record in a light most favorable to the nonmoving party. Flower v. K-Mart Corp.
(1998), 130 Ohio App.3d 617.
 {¶ 31} In construing the evidence most strongly in favor of the nonmoving party, the court necessarily considers the credibility of the evidence. Questions of credibility *Page 12 
typically arise when the motion for summary judgment is based on the evidence of an interested party. Mere interest alone does not automatically create a question of credibility, however. The interest of a witness, or his potential bias, must combine with some other factor to raise the specter of lack of credibility. Duke v. Sanymetal ProductsCo. (1972), 31 Ohio App.2d 78.
 {¶ 32} Though Caplinger is surely an interested party, he was not the movant in the motion for summary judgment the court granted. The court nevertheless found that his "bare assertions without independent corroboration are not persuasive." The court might have given consideration to that fact had Caplinger been seeking to discharge his duty as a nonmoving party under the rule of Dresher v. Burt (1996),75 Ohio St.3d 280, in an effort to rebut New Carlisle's claim that no agreement existed. However, New Carlisle did not make that contention as grounds for the motion it filed, so any lack of corroboration of Caplinger's statements is immaterial.
 {¶ 33} The gist of Caplinger's claim for relief is that he offered his resignation on June 13, 2003, subject to his claim for unpaid leave he would be due once his last day of work was established. Exhibit A, attached to his affidavit, establishes that fact. *Page 13 
 {¶ 34} Caplinger's affidavit further states that, following agreement on the date of his last day of work, he met with the Council on June 23, 2003, and at that meeting presented his claim for forty days of unpaid leave, and that the members of the Council expressed their agreement to pay that claim. Caplinger further states that on the following day, June 24, 2003, he submitted a written claim to that effect, which is attached as Exhibit B.
 {¶ 35} The copy of the minutes of the City Council meeting of July 21, 2003, attached as Exhibit C to the affidavit of Caplinger's attorney, states that the Council voted "to accept James Caplinger's resignation effective July 11, 2003, per his letter to Council of June 13, 2003." That the Council so voted is confirmed by Mayor Shakro in his affidavit.
 {¶ 36} Shakro also avers that at no time did the Council agree to pay Caplinger for the amount of unpaid leave he claims he is due. Shakro also avers that, at the meeting of June 23, 2003, no member of Council discussed or made any promises regarding how many hours of unpaid leave Caplinger is due. That assertion directly contradicts Caplinger's statement that he presented a claim for forty hours of unpaid leave at that meeting, and that members of Council assented to his claim. *Page 14 
 {¶ 37} We agree that the issues critical to Caplinger's claim for relief are whether New Carlisle agreed to compensate him for unused leave, and if it did, the amount of compensation Caplinger is due. Whether there was a meeting of minds on those matters is a question of fact. Neither party is entitled to summary judgment on Caplinger's claim for relief so long as a genuine issue of material fact exists if reasonable minds could reach different results on the issue presented.
 {¶ 38} The trial court concluded that Caplinger's claim is governed by the offer he made in his letter dated June 13, 2003, which specified no amount of unpaid leave he is due. However, the letter proposes to submit a specific claim, once Caplinger's last day of work is agreed upon, and he subsequently submitted a claim for forty days, to which he says the members of Council agreed. Viewing that evidence most strongly in Caplinger's favor, on the motion for summary judgment New Carlisle filed, Council's subsequent action of July 21, 2003, accepting Caplinger's offer of resignation on his proposal of June 13, 2003, may be found to be an acceptance of his offer as modified by the intervening negotiations of the parties.
 {¶ 39} New Carlisle contended at oral argument that the *Page 15 
court implicitly and necessarily found that because the New Carlisle City Council took no formal action to agree to pay Caplinger's claim for forty days leave, New Carlisle, pursuant to its Charter, cannot be bound on Caplinger's claim. However, that contention largely rests on the argument the trial court expressly rejected, and New Carlisle took no appeal from the trial court's judgment. Nevertheless, on this record, the Shakro affidavit is sufficient to preserve a genuine issue of material fact concerning whether an agreement was reached. Furthermore, the existence of that issue of fact prevented the court from granting the motion for summary judgment Caplinger filed.
 {¶ 40} Because on this record reasonable minds could find that New Carlisle agreed on June 23, 2003, to pay Caplinger's claim for hours of unpaid leave, and in a subsequent meeting agreed to pay Caplinger for forty days of unpaid leave, the trial court erred when, instead of construing the evidence on that issue most strongly in Caplinger's favor on New Carlisle's motion, the court rejected his contentions as unpersuasive. That is a result the court could reach only after and upon hearing sworn testimony which is subject to cross-examination, not on the basis of the affidavits that were filed. *Page 16 
 {¶ 41} The assignment of error is sustained. The judgment from which the appeal was taken will be reversed, and the matter will be remanded for further proceedings consistent with this opinion.
 WOLFF, P.J. And DONOVAN, J., concur. *Page 1