McGEE, Exr., Appellant,

v.

GOODYEAR ATOMIC CORPORATION et al., Appellees.*

[Cite as *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236.]

Court of Appeals of Ohio,
Fourth District, Pike County.

No. 94CA530.

Decided March 23, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 73 Ohio St.3d 1449, 654 N.E.2d 985.

238

*Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley* and *Sherrill P. Hondorf; Connerton, Ray & Simon* and *Ronald Simon,* for appellant.

*Vorys, Sater, Seymour & Pease, Robert E. Tait* and *Thomas M. Taggart,* for appellees.

STEPHENSON, Judge.

This is an appeal from a summary judgment entered by the Pike County Court of Common Pleas against Ruth A. McGee, both individually and as executor of the estate of Richard McGee, deceased (plaintiff below and appellant herein) on her claims against Goodyear Atomic Corporation (hereinafter referred to as "Goodyear") and Martin Marietta Energy Systems, Inc. (hereinafter referred to as "Martin Marietta"), defendants below and appellees herein. The following assignments of error are posited for our review:

"I. The trial court incorrectly applied the intentional tort standard of *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, to the facts of this case and committed reversible error in not granting summary judgment in favor of plaintiff."

"II. The trial court incorrectly applied the summary judgment standard to the facts of this case and committed reversible error in granting summary judgment in favor of defendants."

"III. The trial court, despite having concluded that defendants' employee physicians acted in the capacity of both personal physicians and occupational physicians to the plant employees, erred in finding that the dual capacity doctrine did not apply to the facts of this case. *Judgment Entry* at 2, [paragraph] A.2. and 6, [paragraph] c.1."

"IV. The trial court erred in finding that 'fraud' is merely an element of a *Blankenship* -style intentional tort rather than an independent cause of action for intentional tort against the employer. *Judgment Entry* at 7, [paragraph] C.3."

The record reveals the following facts pertinent to this appeal. From the 1950s to 1986, Goodyear operated the Portsmouth Gaseous Diffusion Plant (hereinafter referred to as "the plant") near Piketon, Ohio, under contract with the United States government. Martin Marietta took over operations of the plant on November 16, 1986. Appellant's decedent, Richard E. McGee, began working for Goodyear at the plant in 1975 and continued working for Martin Marietta until he became disabled in 1990. Throughout his employment, decedent was required to work in buildings and around equipment which were being cleaned, or degreased, with an organic solvent known as "trichloroethylene" (hereinafter referred to as "TCE"). The TCE solvent is a known liver toxin and appellees were aware that their employees were being exposed to it.

There are no indications that decedent was suffering from any serious health problems prior to beginning his employment at the plant in 1975. However, as early as 1978, approximately three years after he began working at the plant, there were signs that he was suffering liver problems. An annual health

examination, as part of the occupational medical program at the plant, revealed an abnormally elevated amount of serum bilirubin in decedent's blood. Subsequent examinations over the years, both by decedent's personal physician and by plant physicians, continued to show an elevated bilirubin count. In May 1990, decedent was diagnosed as having cryptogenic (cause unknown) cirrhosis of the liver, which had damaged the organ to such an extent that a transplant was required. He underwent surgery later that year.

Appellant and decedent commenced the cause *sub judice* on September 15, 1992, advancing claims for intentional tort and loss of consortium against appellees. On May 28, 1993, decedent died of complications (cancer) from the liver transplant three years earlier. Appellant was made executor of her husband's estate and was substituted in his place for purposes of maintaining this suit. On August 31, 1993, appellant filed an amended complaint advancing the original claims for intentional tort and loss of consortium. Additional claims were also included in the amended complaint for (1) wrongful death, (2) vicarious negligence for the actions of plant physicians under the dual capacity doctrine, (3) negligence *per se* for failing to properly follow Department of Energy (hereinafter referred to as "DOE") guidelines in providing appropriate medical services to employees, and (4) fraud and estoppel for allegedly concealing the extent of decedent's health condition and the risk of TCE exposure to him. Appellant demanded judgment for $5 million in compensatory damages and $10 million in punitive damages, together with attorney fees and costs. Appellees filed their answer denying all liability and asserting various defenses.

On December 7, 1993, appellant filed a motion for summary judgment together with a plethora of evidentiary materials in support thereof. The substance of her arguments were that appellees were cognizant of the dangers of the TCE solvent and were aware that it causes liver damage; that appellees' knew of the decedent's exposure to such toxins in his everyday work environment; that appellees were aware of his developing liver problems as early as 1978; that these problems became steadily worse; and that appellees never informed the decedent of the serious nature of his health problems, or the dangers of the toxins to which he was exposed, and continued to allow him to work in that environment.

Appellees filed a memorandum contra summary judgment, arguing that appellant had presented no evidence to the effect that they knew the decedent suffered from liver disease prior to 1990; that the decedent had ever been exposed to TCE levels required to cause liver problems; that the TCE levels at the plant could be considered a "dangerous process or condition"; that the appellees had concealed either the risks of TCE exposure to the decedent or his medical condition; or that the decedent was ever required to perform a dangerous task.

Appellees also moved for summary judgment on their own behalf, asserting that there was no evidence to support appellant's claims. Various evidentiary materials were submitted in support of both the memorandum contra and appellees' own motion for summary judgment.

On January 31, 1994, the court below entered judgment denying appellant's motion and granting summary judgment to appellees. Accepting the argument posited by appellees, the court ruled that there was insufficient evidence to indicate that the decedent was exposed to the sort of TCE levels required to cause liver disease. It was also ruled that the evidence negated appellant's claim against appellees under the "dual capacity doctrine" and that no cause of action for fraud exists outside the context of an intentional tort. This appeal followed.

We first consider, out of order, the second assignment of error, wherein it is argued that the lower court improperly granted summary judgment to appellees. It should be noted at the outset that summary judgment under Civ.R. 56 is appropriate only when the movant demonstrates that (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion which is adverse to the opposing party, said party being entitled to have the evidence construed most strongly in its favor. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, 942–943; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. It is the party moving for summary judgment who bears the burden of showing that there exists no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Our analysis of an appeal from a grant of summary judgment is conducted under a *de novo* standard of review. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 767–768; *Ashley v. RHF, Inc.* (Aug. 13, 1993), Pike App. No. 93CA501, unreported, at 3, 1993 WL 303248. That is to say that we afford no deference whatsoever to the trial court's decision, *Shepherd v. United Parcel Serv.* (1992), 84 Ohio App.3d 634, 641, 617 N.E.2d 1152, 1156–1157; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786, 787–788, and conduct our own review to determine if summary judgment was proper under the above standard. See *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10, 11–12; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 139, 601 N.E.2d 515, 519. Applying this standard to the facts in the cause *sub judice*, we agree that summary judgment for appellees was improper.

The court below based its ruling on a finding that "evidence of [the decedent's] exposure to levels of TCE exceeding OSHA standards is minimal at

best." The court conceded that evidentiary materials indicated "problems with TCE at certain times and places at the plant[.]" However, the court ruled, there was no evidence that the decedent had been so exposed to the toxin. We are not persuaded. Certainly, there is no direct evidence of the decedent's exposure to any toxic levels of TCE at any given time or place during his lengthy employment at the plant. It is highly unlikely that anyone would anticipate the need, or have the degree of sophistication necessary, to maintain daily logs of his moment-by-moment exposure to toxic fumes over an employment period spanning roughly fifteen years. Proof of such exposure (in retrospect) would have to be garnered through use of indirect, or circumstantial, evidence. Our own review of the record reveals sufficient evidence to raise a genuine issue of material fact regarding the decedent's exposure to toxic levels of TCE.

It is undisputed that TCE was used as a cleaning solvent at the plant and that there had been previous "problems" with the level of toxicity. The decedent testified in his deposition that, throughout his employment, he worked around vats and equipment where cleaning solvents were being used. The decedent stated that the fumes given off by the chemicals used in these buildings frequently burned his nose and throat. More importantly, depositions by R. Michael Kelly, M.D., and Laura Stewart Welch, M.D., provided expert opinions that decedent's original cirrhosis of the liver was caused by a prolonged occupational exposure to TCE. These opinions were based on their knowledge of TCE as a known liver toxin and their having ruled out other causes for the cirrhosis. Although it was conceded that occupational exposure to other toxic fumes at the plant may have played a role in the disease as well, we find that this is sufficient to raise a genuine factual issue as to the level of decedent's exposure to TCE.

The lower court acknowledged these expert opinions, but discounted their efficacy. The judgment entry provided, *inter alia,* as follows:

"Therefore, to the extent that the opinions of plaintiff's experts as to the cause of McGee's liver condition is based upon his regular exposure to TCE at levels exceedingt [*sic*] OSHA standards, the opinions are suspect. However, *the court concedes that reasonable minds could reach a different conclusion based upon the circumstantial evidence presented.*" (Emphasis added.)

 This was error. There is nothing in the law which prevents the trier of fact from deciding a case on the basis of circumstantial evidence. The fact that there was no direct evidence of the decedent's exposure to toxic levels of TCE goes only to the issues of weight and credibility to be afforded those expert opinions. It is generally inappropriate to consider either "the quantum" or the "superior credibility" of evidence in analyzing a motion for summary judgment. *Hirschberg v. Albright* (Ohio App.1974), 67 O.O.2d 219, 219–220, 322 N.E.2d 682, 683. The purpose of summary judgment is not to try issues of fact, but rather to

determine whether triable issues of fact exist. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 15, 13 OBR 8, 16–17, 467 N.E.2d 1378. Thus, a court should not pass upon the credibility of witnesses or weigh the relative value of their testimony in rendering summary judgment. See *Mayfield v. Boy Scouts of Am.* (1994), 95 Ohio App.3d 655, 659–660, 643 N.E.2d 565, 568–569; *Shaheen v. Boston Mills Ski Resort, Inc.* (1992), 85 Ohio App.3d 285, 288, 619 N.E.2d 1037, 1039; *Halley v. Grant Trucking, Inc.* (1990), 67 Ohio App.3d 357, 364, 587 N.E.2d 305, 309; *Killilea v. Sears Roebuck & Co.* (1985), 27 Ohio App.3d 163, 27 OBR 196, 499 N.E.2d 1291. The expert opinions of Drs. Kelly and Welch are sufficient to raise a genuine factual issue as to the level of decedent's TCE exposure, regardless of how circumstantial they might be.

■ Appellees counterargue that the evidentiary materials submitted on summary judgment are, nevertheless, insufficient to raise a genuine factual issue with regard to the remaining elements necessary to establish their liability. We disagree. The workers' compensation provisions of R.C. Chapter 4123 generally insulate an employer from liability at common law for injuries received, or occupational diseases contracted, by an employee during the course of his employment. See, generally, *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 611–612, 23 O.O.3d 504, 506–507, 433 N.E.2d 572, 575–576. However, these statutes do not bestow employer immunity for intentional conduct, as such conduct is generally not incident to employment and, therefore, the employee may resort to a civil suit for damages. *Id.*, 69 Ohio St.2d at 613, 23 O.O.3d at 507–508, 433 N.E.2d at 576. Although such a suit contemplates redress of tortious conduct that occurs during the course of employment, an intentional tort alleged in this context necessarily occurs outside the employment relationship and is thus not preempted by constitutional or statutory provisions of Ohio law. See *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 230, 631 N.E.2d 582, 587; *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, at paragraph one of the syllabus. The most recent attempt by the Ohio Supreme Court to delineate the parameters of an "intentional tort" was in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph one of the syllabus, as follows:

"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will

be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."

The court then further defined the requisite element of intent, and the burden of proof necessary to establish it, as follows:

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty— is not intent." *Id.* at paragraph two of the syllabus.

■ It should be noted, however, that appellant was not required so to prove her case at this juncture of the proceedings below. In an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth only specific facts which show that there is a genuine issue whether the employer committed an intentional tort against its employee. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, at paragraph seven of the syllabus. Appellant was required to garner only sufficient evidentiary material to demonstrate that there were triable issues on her claim for intentional tort. In reviewing the record under this standard, we are convinced that she met her burden.

Walter Lyon, M.D., testified in his deposition below that the liver was known to be a "target organ" for organic solvents since the 1960s. Documents purportedly generated by appellees tend to indicate that they were well aware of the dangers posed by such solvents. A July 1980 "Bulletin" released by Goodyear warns that "repeated exposure to some organic [solvents] is *known to cause liver damage.*" (Emphasis added.) More specifically, "Health Physics and Industrial Hygiene Inspection Reports" from as early as 1976 and 1977 indicate appellees' awareness of the dangers of this chemical and posits the warning that concentrations of TCE vapors "could seriously expose other employees, who are working in adjoining areas, to *extremely toxic gases and vapors* [.]" (Emphasis added.) Dr. Lyon revealed in his deposition that use of TCE has been discontinued at the plant, or is being used in smaller quantities, and has been replaced with a less toxic chemical. These materials certainly raise a genuine factual issue with regard to

appellees' knowledge of a "dangerous process" or "instrumentality * * * within its business operation."

Moreover, there were sufficient evidentiary materials submitted below to suggest that appellees knew the decedent's continued exposure to TCE vapors was substantially certain to cause him harm. Robert Kirkpatrick, M.D., revealed in his deposition that the decedent's cirrhosis was at "end stage" by 1990. However, Dr. Kirkpatrick opined that the cirrhosis would have been fairly extensive back in 1987 and that the decedent's blood chemistry as far back as 1984 showed "significant impairment of the liver." The decedent's medical history showed serum bilirubin at the "upper limits of * * * normal" by 1982 and was clearly at an abnormal amount by 1986 when an "enlarged liver" could be felt.

The decedent testified in his own deposition that, upon discovering these abnormalities, the plant physicians merely referred him to his family doctor. He was never told that he might have liver disease or be seriously sick. Expert medical opinion is severely critical of the action taken by the plant and its physicians in this respect. Dr. Welch opined that appellees should have made sure decedent got proper medical care, as he would not have been in a position to understand the significance of elevated bilirubin. Dr. Welch further explained that it would be the plant physician, rather than the decedent's own physician, who bore the responsibility for determining whether there was a "serious problem." This, she explained, was "[t]he reason he was given medical surveillance * * * because he was in a hazardous job." Dr. Kelly further explained this responsibility as follows:

"First of all, this was not just any facility. This was a Department of Energy facility, run under the auspices of [the] Department of Energy. The physicians and they had an entire health department in this facility with hygienists, physicists, physicians, individuals intimately acquainted with the toxicities of the materials at the facility. Clearly there was an understanding that toxic materials were being handled. These individuals had very extensive monitoring, far in excess of quote, unquote, normal processing for that period of time.

"Yet, the community in which this facility was in was not near a university. I should say that the understanding of local physicians was probably fairly poor as to the kinds of materials being handled there. So it really was incumbent upon the physicians and the health officials at the facility to communicate very directly to the employee, the patient, and the employee's physician as to why they would even refer him for an elevated bilirubin and then subsequently elevated liver enzymes. That would have been very important to do that. Because people wouldn't—Mr. McGee or many local physicians really wouldn't understand or

know that there were hazardous materials being used there and what ought to be evaluated."

This is sufficient to raise a genuine issue of material fact whether appellees were substantially certain that continued exposure to TCE vapors would cause appellant harm and, nevertheless, appellees continued to allow him to work in such an environment without securing him adequate medical attention. In short, the evidentiary materials submitted below adequately demonstrate the elements of an intentional tort (as outlined in *Fyffe, supra*) so as to survive a motion for summary judgment. The second assignment of error is well taken and, accordingly, sustained.

We now return to the first assignment of error wherein appellant argues that the lower court erroneously denied her motion for summary judgment. This argument is without merit for much the same reason as her previous argument was meritorious (*i.e.,* there remain genuine factual issues with regard to establishing the elements of an intentional tort). To begin, the lower court correctly noted that evidence of decedent's exposure to toxic levels of TCE is "minimal at best." Although there is sufficient circumstantial evidence from which this fact could be inferred, that evidence does not conclusively establish the issue so as to remove it from the realm of inquiry.

Appellees also submitted copies of various medical records from examinations of decedent which make no mention of elevated bilirubin or possible liver disease. An affidavit by John W. Franklin, M.D., the decedent's own personal physician, sets forth that he was aware of laboratory tests conducted by the plant and their demonstration of elevated bilirubin in the decedent. However, Dr. Franklin attested that he did not diagnose any underlying liver disease in the absence of physical complaints because "many people have congenital bilirubin elevation which is a laboratory phenomen[on] but not a disease."

In order to prove an intentional tort, an injured employee must present evidence that the employer had knowledge of the risk and probability of harm beyond that which would be required to show negligence or recklessness. See *Fyffe, supra,* at paragraph two of the syllabus. This is a difficult standard to meet. Appellant, nevertheless, garnered sufficient evidentiary materials to meet that standard for purposes of summary judgment. Likewise, appellees produced sufficient evidence to rebut the contention that they were aware of either the risk of harm to decedent or his progressive liver disease. These issues remain to be determined by the trier of fact and, therefore, summary judgment would have been improper. The first assignment of error is overruled.

Turning now to the third assignment of error, appellant argues that the lower court erroneously entered summary judgment against her "on her

cause of action for dual capacity." We note, initially, that appellant's argument has a few problems with semantics. There is no "cause of action for dual capacity" under Ohio law. The claim itself is for negligence or malpractice (or, as appellant argues elsewhere in her brief, negligence *per se* ). The "dual capacity doctrine" is the legal theory or vehicle by which the workers' compensation laws are sidestepped to allow the presentation of these common-law claims against an employer. The seminal case in applying this doctrine is *Guy v. Arthur H. Thomas Co.* (1978), 55 Ohio St.2d 183, 9 O.O.3d 138, 378 N.E.2d 488, wherein the Ohio Supreme Court ruled as follows in its syllabus:

"Where an employer-hospital occupies a second or dual capacity, as an administering hospital, that confers upon it traditional obligations unrelated to and independent of those imposed upon it as an employer, an employee injured, as a result of a violation of the obligations springing from employer-hospital's second or dual capacity, is not barred by either Section 35 of Article II of the Ohio Constitution or R.C. 4123.74, Ohio Workers' Compensation Law, from recovering in tort from that employer-hospital."

The court below found that the occupational medical program maintained by appellees was required by its contract with the federal government. Thus, the court reasoned, the medical and health obligations were imposed on appellees as employers and the dual capacity doctrine would not apply in this instance. Appellant argues that this was incorrect. We agree.

In order for the dual capacity doctrine to apply, there must be an allegation and showing that the employer occupied two independent and unrelated relationships with the employee, that (at the times of these roles) there were occasioned two different obligations to the employee and that the employer had during such time assumed a role other than that of employer. See *Schump v. Firestone Tire & Rubber Co.* (1989), 44 Ohio St.3d 148, 150, 541 N.E.2d 1040, 1042–1043; *Bakonyi v. Ralston Purina Co.* (1985), 17 Ohio St.3d 154, 157, 17 OBR 356, 358–359, 478 N.E.2d 241, 243–244; *Freese v. Consol. Rail Corp.* (1983), 4 Ohio St.3d 5, 12, 4 OBR 5, 10–11, 445 N.E.2d 1110, 1115–1116. An employer may become a third person, amenable to tort suit by an employee under this doctrine, if—and only if—he possesses a second persona so completely independent from, and unrelated to, his status as an employer that by established standards the law·recognizes it as a separate legal person. See *McDonald v. Contractors & Indus. Bldrs.* (Aug. 26, 1992), Scioto App. No. 91CA2005, unreported, at 16, 1992 WL 209499. See, also, 2A Larson, Workmen's Compensation (1988) 14–229, Section 72.81(a). In other words, the inquiry to be made is whether the employment relationship is incidental to or predominates in the circumstances surrounding the incident giving rise to the complaint herein. See

*Lucas v. Prose* (Mar. 12, 1992), Franklin App. No. 91AP–917, unreported, 1992 WL 218087.

There is no question in the cause *sub judice* that appellees were required by the federal government to maintain a medical facility at the plant in order to monitor the occupational needs of employees at their workplace. However, this does not necessarily end the inquiry. It is still possible that appellees went beyond what was required by the federal mandate and provided nonoccupational health and medical services to its employees, thereby bringing themselves within the realm of a second capacity as explained in *Guy, supra.* The decedent testified in his deposition that he treated plant physicians as his "family doctor." He recalled, on one occasion, cutting his foot with a lawn mower at home and plant physicians "took care of it." Orval Dean, M.D., testified in his deposition that he was aware of plant employees regarding him as a "family doctor" and admitted treating them for "a cold or touch of the flu or minor ache or pain[.]" Similar testimony was given by Robert Prots, M.D., who stated that he viewed his obligation to plant employees the same way as a "private doctor." Dr. Prots stated that this included being "responsive to stress in the family, children not doing well, that sort of thing[.]" This evidence is sufficient to raise a genuine factual issue as to whether plant physicians went beyond providing government-mandated occupational health care and assumed a second status of personal physician to employees.

Appellant then carries her argument one step further and invites this court to enter summary judgment in her favor on this issue. We decline. Drs. Dean and Prots also gave testimony to the effect that they advised plant employees to see their own physicians, or seek outside medical help, on many nonoccupational health complaints. This issue will have to be developed further during the course of these proceedings. Nevertheless, appellant's third assignment of error is well taken and sustained.

Appellant's fourth assignment of error asserts that the trial court improperly dismissed her claim for common-law fraud outside the context of an intentional tort. This assertion and its accompanying arguments are most confusing. It would appear that (again) a problem with semantics is largely responsible for this confusion. Nevertheless, to the extent that the trial court held that an action for fraud could not be maintained outside the parameters of an intentional tort as delineated in *Blankenship* and *Fyffe, supra,* we agree. See *Franko v. Std. Oil Co.* (Jan. 24, 1991), Cuyahoga App. No. 57861, unreported, 1991 WL 6475. The assignment of error is, therefore, without merit and is overruled.

However, we parenthetically note that any concept of a single monolithic type of "intentional tort" is misguided. The Ohio Supreme Court ruled in *Blankenship, supra,* 69 Ohio St.2d at 615, 23 O.O.3d at 508–509, 433 N.E.2d at 577–578, that an employer should not be able to escape liability under the workers' compensation laws for any intentionally tortious conduct. To be sure, employer

battery is regarded as the most "true" intentional tort exception to the exclusive recovery rule under workers' compensation law. See, *e.g., Brady, supra,* 61 Ohio St.3d at 640, 576 N.E.2d at 733 (H. Brown, J., concurring); *Van Fossen, supra,* 36 Ohio St.3d at 113, 522 N.E.2d at 501, fn. 18. We are aware of nothing, however, which would prevent an action for intentional tort to be based on fraud rather than battery. Fraud requires a certain degree of scienter and is thus, by definition, an intentional tort. See, generally, Prosser & Keeton, Torts (5 Ed.1984) 741, Section 107. The Ohio Supreme Court has referred to fraud as an intentional tort, see, *e.g., Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105, 107, in the same category as other intentional torts as assault, battery, defamation, and intentional infliction of emotional distress. *Id.;* see, also, *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 668, 635 N.E.2d 331, 354, at fn. 12 (Wright, J., dissenting). We also note that our colleagues on the Lucas County Court of Appeals have ruled that an intentional tort claim can be based on allegations that the employer fraudulently misled an employee by not informing him of a serious health condition revealed during employee medical exams. See *Delamotte v. Midland Ross Corp.* (1978), 64 Ohio App.2d 159, 18 O.O.3d 117, 411 N.E.2d 814. The Ohio Supreme Court has cited this result affirmatively. See *Blankenship, supra,* 69 Ohio St.2d at 612–613, 23 O.O.3d at 507–508, 433 N.E.2d at 575–576.

Thus, although appellant cannot maintain an action for fraud outside the traditional confines of an intentional tort, her action for intentional tort can still be based on fraud. It would appear to us that the parties herein have confused the concept of a "cause of action" with the underlying factual bases for that cause of action. Appellant has alleged sufficient factual allegations to set forth two claims for intentional tort in the cause *sub judice:* one in battery (for knowingly subjecting her decedent to the toxic TCE vapors) and one in fraud (for misleading him as to the seriousness of elevated serum bilirubin and the potential for liver disease). The relative merits of these claims remain to be determined by the trier of fact.

In sum, having sustained the second and third assignments of error, the judgment of the lower court is reversed, in part. The cause will be remanded to the lower court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PETER B. ABELE, P.J., and GREY, J., concur.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.