[Cite as *Moore v. E.I. DuPontde Nemours Co.*, 2015-Ohio-5331.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| MELISSA MOORE, | : | Case No. 15CA12 |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| E.I. DuPONT de NEMOURS Co., et al., | : | |
| | : | |
| Defendants-Appellees. | : | **Released: 12/10/15** |

APPEARANCES:

Thomas Tootle, Law Office of Thomas Tootle Co., LPA, Columbus, Ohio, for Appellant.

Carl D. Smallwood, Vorys, Sater, Seymour and Pease LLP, Columbus, Ohio, for Appellees.

McFarland, A.J.

{¶1} Melissa Moore appeals the final judgment entered on February 26, 2015, in the Pickaway County Court of Common Pleas. Appellant asserts that the trial court erred in granting summary judgment in her action for workers compensation death benefits to Appellee E.I. DuPont de Nemours and Company, hereinafter "DuPont." Having reviewed the record, we find the trial court did not err. Appellant's assignment of error is without merit. As such, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2}  On May 27, 2011, Dennis Moore, an employee of DuPont, collapsed and died at work.  The parties agree he suffered a fatal acute myocardial infarction, a heart attack, at the time.  Moore's spouse, Appellant Melissa Moore, filed a timely claim for dependents benefits resulting from the death of her husband with the Ohio Bureau of Workers Compensation (BWC).  She asserted her husband suffered the heart attack in the course and scope of his employment with DuPont. BWC referred the matter to the Industrial Commission of Ohio for adjudication. Pursuant to R.C. 4121.34 and R.C. 4123.511, a hearing took place and Appellant's claim was disallowed.  Appellant appealed to the Industrial Commission staff hearing officer who affirmed denial of the claim.  The Industrial Commission of Ohio denied Appellant's request for further review.

{¶3} Pursuant to R.C. 4123.512, Appellant filed a timely action in the Pickaway County Court of Common Pleas.  The parties engaged in discovery. Appellant and Ralph W. Newman, D.O. were deposed.

{¶4} Appellant testified she and her husband met in high school and married while still in their teens.  They were both high school graduates.  At the time of Mr. Moore's death at age 47, the Moores had two adult children.  Appellant testified her husband had worked his entire adult life, working as a brick mason, a laborer, or a janitor.  At one time he owned his own masonry business.

{¶5} Dennis Moore began working at DuPont in September 2010. Prior to that time, he had been prescribed medicine for hypertension (high blood pressure) for several years. Mr. Moore also had a history of intermittent cigarette smoking, beginning in his teen years. Appellant testified her husband had smoked one pack of cigarettes a day since 2004.

{¶6} Mr. Moore's job at DuPont was on the Kapton manufacturing line. He wore a suit referred to as "personal protective equipment." The suit included a respirator, hood, and boots that insulated him from high temperatures. Specifically, Mr. Moore's job entailed working in a sealed oven at a temperature of 120 degrees, threading film into production equipment. Other workers watched the procedure from a glass observation window. While in the oven, the only communication was by hand signals. The oven contained Dimethylacetamide and other hazardous chemicals.[1]

{¶7} Appellant testified her husband was not sure the protective suits were reliable, and he feared exposure to the chemicals. She also testified he was concerned about being in the oven, the lack of ability to communicate while in the oven, and the instances when co-workers would step on the air hose attached to his protective suit as a "practical joke." He was concerned that other workers did not take safety seriously. Appellant identified Exhibit 2 of her deposition, a small

---

[1]According to the website for the Centers for Disease Control and Prevention (CDC), the National Institute for Occupational Safety and Health (NIOSH) pocket guide to hazardous chemicals (www.cdc.gov page last updated February 13, 2015), "Dimethylacetamide" is a combustible colorless liquid that emits an ammonia-like smell.

notebook her husband kept containing notes on topics such as the tasks he performed at DuPont, the chemicals he was exposed to on a daily basis, and plant safety protocols.

{¶8} Appellant testified to an incident which took place in April 2011. Her husband called home sounding scared, and said he had "gotten dizzy" at work. Medical personnel at DuPont took his blood pressure and reported it as "good." He was advised he was dehydrated and given Gatorade to drink.

{¶9} Appellant also testified regarding her husband's last doctor appointment, a few weeks before he passed. According to her testimony, Appellant did not attend the appointment but Mr. Moore had seen his family doctor and told her his blood pressure was "excellent." After Moore's death, the doctor commented to Appellant that he had given Mr. Moore "the best checkup he ever gave him."

{¶10} Appellant also testified that approximately 10 days before her husband's death, there was an incident at work where a chemical was "sent through the wrong line." Mr. Moore and a co-worker had to shovel polymer [2] out of a basement area. Appellant testified her husband was worried about exposure to the chemical because they were not wearing their hazmat suits at the time. She did not recall whether he showed any ill effects afterwards.

---

[2] According to Merriam Webster's online dictionary and Encyclopedia Britannia Company (Nov. 3, 2015), a "polymer" is a chemical compound that is made of small molecules that are arranged in a simple repeating structure to form a large molecule.

{¶11} Appellant testified the last night her husband worked, he called her around midnight for a brief conversation. The next thing she recalled is receiving a call from DuPont employee Don Williams, who told her Moore had fallen, hit his head, and had been taken to Berger Hospital. When Appellant arrived at the hospital, she waited two hours before being taken in a room and told her husband was dead.

{¶12} Appellant's expert Dr. Newman testified he has a family practice. He does not consider himself an expert in psychiatry, psychology, pathology, cardiology, occupational medicine, cardiovascular disease, or the health effects of occupational stress. He testified he has never conducted research concerning heart disease, occupational stress or emotional stress. He has not conducted research relating to possible risk factors for heart disease. Dr. Newman reviewed various documents in order to render an opinion as to the cause of Mr. Moore's heart attack, including Mr. Moore's death certificate, autopsy report, and Berger hospital records. He also reviewed records from DuPont which included the incident narrative, Occupational Safety and Health Administration (OSHA) report, and Moore's pre-employment physical. Dr. Newman testified he relied on Appellant to obtain an individual background and history for Mr. Moore. Dr. Newman testified the autopsy report noted Dennis Moore had sustained a heart attack 7-10 days prior to his death at work.

{¶13} On cross-examination, Dr. Newman testified he could not rule out hypertension, smoking, elevated cholesterol levels, genetic factors and family history as causing Moore's heart attack. He testified the only evidence of stress was obtained from Moore's wife. Dr. Newman admitted he had no evidence of what effect Moore's work had on him; what physical demands were made on him on the day he died; or that Moore had chest pain, discomfort, sweating, numbness, or elevated body temperature on the day he died. Dr. Newman agreed it was "truly speculative to assert that stress played a part in what happened on May 27, 2011."

{¶14} DuPont filed a motion for summary judgment. Appellant filed a reply to the motion for summary judgment. Attached to the reply was an affidavit of Dr. Newman which supplemented his deposition testimony. On February 26, 2015, the trial court granted DuPont's motion for summary judgment. This timely appeal followed.

## ASSIGNMENT OF ERROR

"I. THE TRIAL COURT ERRED IN GRANTING SUMMARY
JUDGMENT TO APPELLEE E.I. DUPONT DE NEMOURS AND
CO."

## STANDARD OF REVIEW

{¶15} When an appellate court reviews a trial court's summary judgment, the appellate court conducts a de novo review. *Ingram v. Conrad,* 4th Dist. Athens No. 01CA36, 2001-Ohio-2631, *3. See, *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d

102, 105, 671 N.E.2d 241(1996).  Accordingly, an appellate court must

independently review the record to determine if summary judgment was

appropriate and need not defer to the trial court's decision. See, *Brown v. Scioto*

*Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); *Morehead v.*

*Conley*, 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786 (1991).  In determining

whether a trial court properly granted a motion for summary judgment, an

appellate court must review the standard for granting a motion for summary

judgment as set forth in Civ.R. 56, as well as the applicable law.

{¶16} Civ.R. 56(C) provides, in relevant part, as follows:

"* * * Summary judgment shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, written admissions,
affidavits, transcripts of evidence in the pending case, and written
stipulations of fact, if any, timely filed in the action, show that there is
no genuine issue as to any material fact and that the moving party is
entitled to judgment as a matter of law.  No evidence or stipulation
may be considered except as stated in this rule.  A summary judgment
shall not be rendered unless it appears from the evidence or
stipulation, and only from the evidence or stipulation, that reasonable
minds can come to but one conclusion and that conclusion is adverse
to the party against whom the motion for summary judgment is made,
that party being entitled to have the evidence or stipulation construed
most strongly in the party's favor." *Ingram, supra,* at *4.

{¶17} Thus, a trial court may not grant a motion for summary judgment

unless the evidence before the court demonstrates that: (1) no genuine issue as to

any material fact remains to be litigated; (2) the moving party is entitled to

judgment as a matter of law; and (3) it appears from the evidence that reasonable

minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.* See, *Vahila v. Hall*, 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164 (1997).

{¶18} In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." *Ingram, supra,* at ¶ 4, quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1998). Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. *Ingram, supra.* Specifically, Civ.R. 56(E) provides:

> "* * *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶19} Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. *Ingram, supra,* at ¶ 4. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine

issue for trial. *Id. Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996);

*Jackson v. Alert Fire & Safety Equip., Inc.*, 58 Ohio St.3d 48, 52, 567 N.E.2d 1027

(1991).

{¶20} When reviewing a motion for summary judgment, a court must

construe all reasonable inferences that can be drawn from the evidentiary materials

in a light most favorable to the nonmoving party. *Ingram, supra,* at *5. See,

*Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485, 696 N.E.2d 1044

(1998); *Turner v. Turner*, 67 Ohio St.3d 337, 341, 617 N.E.2d 1123 (1993).

Moreover, a court must take care not "to consider either 'the quantum' or the

'superior credibility' of evidence." *Ingram, supra,* quoting *McGee v. Goodyear*

*Atomic Corp.*, 103 Ohio App.3d 236, 242, 659 N.E.2d 317 (1995).  As we stated in

*McGee,* 103 Ohio App.3d at 242-43, 659 N.E.2d 317:

> "The purpose of summary judgment is not to try issues of fact, but
> rather to determine whether triable issues of fact exist. * * * Thus, a
> court should not pass upon the credibility of witnesses or weigh the
> relative value of their testimony in rendering summary judgment."
> (Citation omitted.) See, also, *Koeth v. Timesavers, Inc.* (May 26,
> 2000), Geauga App. No. 99-G-2211, unreported ("It is not the
> province of the trial court in a summary judgment exercise to either
> weigh the evidence before it, or to accept one party's interpretations of
> that evidence in toto.").

## LEGAL ANALYSIS

{¶21} Chapters 4121 and 4123 of the Ohio Revised Code set forth the

statutory law pertaining to the Ohio Industrial Commission and the Bureau of

Workers Compensation.  Appellant's action for workers compensation benefits in the Pickaway County Court of Common Pleas was brought pursuant to R.C. 4123.512(C).  R.C. 4123.01(C) provides that: "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.  In *Ryan v. Connor,* 28 Ohio St.3d 406, 503 N.E.2d 1379 (1986), the Supreme Court of Ohio held that a physical injury occasioned solely by mental or emotional stress, received in the course of, and arising out of, an injured employee's employment, is compensable under R.C. 4123.01(C). *Id.* at paragraph 1 of the syllabus.  The *Ryan* court adopted a test developed by the New York Court of Appeals and which had been effectively applied by other jurisdictions.  *Ryan* further held that in order for a stress-related injury to be compensable, the claimant must show that the injury resulted from " 'greater emotional strain or tension than that to which all workers are occasionally subjected * * *.' " *Wilson v. Tippetts-Abbott-McCarthy-Stratton*, 22 A.D.2d 720, 721, 253 N.Y.S.2d 149, 150 (1964). See, also, *Santacroce v. 40 W. 20th St., Inc.*, 10 N.Y.2d 855, 222 N.Y.S.2d 689, 178 N.E.2d 912 (1961).  *Ryan, supra,* at paragraph 2 of the syllabus.

{¶22} As established in *Ryan,* once a claimant has met the first test, he still must establish that the stress to which he (or claimant's decedent) was subjected in his employment was, in fact, the medical cause of his injury.  In this regard, the

claimant must show a substantial causal relationship between the stress and the injury for which compensation is sought. The claimant therefore must "show by a preponderance of the evidence, medical or otherwise, * * * that a direct or proximate causal relationship existed between * * * [the stress] and his harm or disability," *Fox v. Indus. Comm.,* 162 Ohio St. 569, 125 N.E.2d 1 (1995), paragraph 1 of the syllabus; or, when death benefits are sought, that the claimant's decedent's death was "accelerated by a substantial period of time as a direct and proximate result of the * * * [stress]." *McKee v. Electric Auto-Lite Co.*, 168 Ohio St. 77, 151 N.E.2d 540 (1958), syllabus. *Ryan, supra,* at paragraph 3 of the syllabus. "[T]he factual issue of causal relationship is generally for the medical experts and the triers of fact," and "analysis must proceed on a case-by-case basis * * *," *Ryan, supra,* at *3, quoting *Village v. General Motors Corp,* 15 Ohio St.3d 129, 136, 472 N.E.2d 1079 (1984).

{¶23} In the case at bar, Appellant argues that the trial court erred in granting DuPont's motion for summary judgment because a genuine issue of material fact remains as to whether Dennis Moore's heart attack was due to unusual or extreme workplace stress. Appellant points out that Dr. Newman's affidavit statements and his deposition testimony clearly raise questions whether Moore's death was caused or accelerated by the stress of his employment. Appellant asserts that the trial court improperly raised her burden to require her to

establish that workplace stress was the sole cause of her husband's heart attack. Appellant contends that the trial court ignored Dr. Newman's opinion, to a reasonable degree of medical certainty that "* * * the death of Dennis P. Moore was accelerated by a substantial period of time as a direct and proximate result of his workplace stress," and instead relied on Dr. Newman's cross-examination testimony set forth below.

{¶24} Appellee counters that Appellant failed to meet either of the *Ryan* requirements. DuPont counters that Appellant presented no evidence in the trial court that her husband was subject to "more extreme stress at his job than other workers occasionally experience at their jobs." Furthermore, Appellee argues since Appellant did not address this requirement in her brief, she has waived any claim of error and the trial court's ruling should be affirmed despite whether or not she satisfied the second *Ryan* requirement. DuPont characterizes the trial court's lack of discussion of the first requirement as properly holding that Appellant failed to present evidence on the first requirement.

{¶25} Regarding the second *Ryan* requirement, DuPont argues there was no evidence that extreme or unusual workplace stress was a proximate cause of Mr.

Moore's death. DuPont points out Dr. Newman agreed in his deposition testimony

that "it's truly speculative to assert * * * that stress played any part."[3]

{¶26} The trial court concluded in its final judgment entry appealed from:

"[A]fter reviewing all the evidence submitted in support of the parties' respective positions, this Court finds that without evidence establishing general causation between work-place stress and the decedent's myocardial infarction, Plaintiff cannot establish the proximate cause of Mr. Moore's death. Plaintiff's failure to prove either one of the two factual requirements set forth in *Ryan v. Connor* is fatal to her claim."

{¶27} We have conducted, as required, a de novo review of this record. A

reviewing court passes upon the correctness of a judgment and not reasons for a

judgment. *Halley v. Grant Trucking, Inc., supra,* at ¶ 3 (internal citations omitted).

Construing the evidence most strongly in favor of the non-moving party, we find

no genuine issues of material fact. For the reasons which will follow, we find that

Appellant failed to establish the proximate cause of her husband's heart attack and

death. Here, implicit in the trial court's decision is the acknowledgement that

Appellant established the first *Ryan* requirement, unusual workplace stress. We

---

[3] In her reply brief, Appellant argues that DuPont took the trial court's decision out of context and she did not waive the issue of the unusual degree of workplace stress. Appellant contends that in refraining to address the issue of the first *Ryan* requirement, the trial court appeared to concede that DuPont's arguments on this issue, during motion practice, were without merit and the sole issue was causation. Appellant cites *Powell v. Grant Medical Center,* 2002-Ohio-443, and *Paugh v. Hanks,* 6 Ohio St. 3d 72 (1983), which held that a plaintiff can submit the testimony of lay witnesses as evidence of unusual workplace stress. In support, Appellant points to: (1) the affidavit attached to her reply to Appellees' motion for summary judgment which described her personal observations of marked changes to her husband's emotional makeup after taking the job at DuPont; (2) the notebook submitted as an exhibit attached to her affidavit which contained her husband's notes showing his preoccupation with safety procedures and danger; and (3) her lay testimony that he expressed his fears and anxiety to her. Because we find that Appellant did not establish proximate cause, we decline to consider these arguments.

agree that she failed to establish the second requirement, proximate cause, which is fatal to her claim.

{¶28} To receive death benefits under the Workers' Compensation Act, a claimant must establish that the employee's injury was the proximate cause of his death. *Click v. S. Ohio Correctional Facility,* 152 Ohio App.3d 560, 2003-Ohio-2208, 789 N.E.2d 643, (4th Dist.), ¶ 8; *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 587, 575 N.E.2d 828 (1991), citing *Aiken v. Indus. Comm.*, 143 Ohio St. 113, 53 N.E.2d 1018 (1944).  The definition of and principles that govern the determination of proximate cause in the field of torts are equally applicable in workers' compensation cases. *Oswald v. Connor*, 16 Ohio St.3d 38, 42, 476 N.E.2d 658, (1985), citing *Aiken, supra.*  "[T]he proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *Aiken,* 143 Ohio St. at 117, 53 N.E.2d 1018.  In general tort or injury cases, proximate cause issues are seldom resolvable by summary judgment. *Halley v. Grant Trucking, Inc.,* 67 Ohio App.3d 357, 587 N.E.2d 305, (4th Dist. 1990), citing *Whiteleather v. Yosowitz,* 10 Ohio App. 3d 272, 274, 461 N.E.2d 1331, 1334-1335 (1983).

{¶29} In *Click v. S. Ohio Correctional Facility, supra*, Mrs. Click contended she was entitled to receive death benefits because her husband's previously

allowed work-related injury caused his heart attack.  While employed as a correctional officer, Mr. Click had suffered bruising, sprain and neuralgia in the right lower extremity, and chronic depression.  BWC allowed claims for these injuries.  However, Mr. Click filed a claim for permanent total disability benefits which was denied by the Industrial Commission.  According to his wife's testimony, Mr. Click became very distressed upon learning of the rejection of his claim, suffered a heart attack the next day, and died.

{¶30} Mrs. Click then filed a claim with BWC for death benefits.  The Industrial Commission denied this claim and she appealed to the Scioto County Court of Common Pleas.  Following motion practice, the trial court granted the summary judgment of appellees.  Mrs. Click appealed.  Upon our review of the decision, we found that the affidavit of her husband's psychiatrist, which Mrs. Click relied on to establish causation, was insufficient to overcome appellees' motions for summary judgment.  We observed at ¶ 12:

> "When an expert's affidavit is offered to support or oppose summary judgment, the affidavit must comply with Civ.R. 56(E) as well as Evid.R. 702 through 705, which govern expert opinion testimony. *Lawson v. Song* (Sept. 23, 1997), Scioto App. No. 97CA2480, 1997 WL 596293. See, also, *Naugle v. Campbell Soup Co.* (June 20, 1986), Henry App. No. 7-84-24, 1986 WL 7312; *Miltenberger v. Exco Co.* (Nov. 23, 1998), Butler App. No. CA98-04-087, 1998 WL 812910. Under Civ.R. 56(E), an affidavit must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify as to the matter.  In order to be competent to testify about a matter, an expert witness must have sufficient knowledge, skill, experience, training, and education in the

subject matter of his or her testimony to satisfy Evid.R. 702. See Evid.R. 702(B); *Ratliff v. Morehead* (May 19, 1998), Scioto App. No. 97CA2505, 1998 WL 254031."

**{¶31}** We held:

"The only evidence offered to establish a causal connection between Mr. Click's previously allowed work-related injury and his heart attack is the affidavit of Dr. Borders, Mr. Click's psychiatrist. In his affidavit, Dr. Borders indicates that Mr. Click's previously allowed injury contributed to his death. However, Dr. Borders's affidavit does not affirmatively establish any specialized training, skill, experience, or knowledge regarding heart attacks. While Dr. Borders is a licensed medical doctor, "[a] mere showing that the physician is licensed does not always satisfy the requirement that the witness be 'qualified by specialized knowledge, skill, experience, training, or education regarding the subject matter of testimony.' " *Ratliff,* quoting Evid.R. 702. Dr. Borders's affidavit indicates that he possesses specialized knowledge, skill, experience, training, or education in the field of psychiatry. However, the affidavit does not affirmatively establish that Dr. Borders is qualified to offer an opinion above and beyond Mr. Click's psychiatric treatment."

**{¶32}** In the case sub judice, Dr. Newman testified as follows:

Q:          Do you consider yourself an expert in the epidemiology, pathology or morbidity of cardiovascular disease?

A:          No.

Q:          You've never conducted any medical or scientific research on the subject of occupational stress; is that correct?

A:          Yes.

**{¶33}** Dr. Newman's affidavit stated at paragraph 1:

1.     I am a licensed Ohio medical doctor and have held my Ohio license since 1973.

2.      As a physician, I provide care and treatment for patients diagnosed with heart disease and/or heart attack.

{¶34} As in *Click, supra,* Dr. Newman is a licensed medical doctor but his affidavit does not satisfy the requirement of Evid.R. 702 that he must have specialized training, skill, knowledge, or experience regarding heart attacks.  Like many family physicians, Dr. Newman may in fact treat patients diagnosed with heart disease and/or heart attack and/or various other medical conditions such as the common cold, flu, seasonal allergies, minor injuries, etc., but he likely refers his patients with heart disease, heart attack, or other serious conditions such as cancer, thyroid problems, intestinal issues, kidney problems, etc., to specialists such as cardiologists, oncologists, endocrinologists, gastroenterologists, and nephrologists.  In our view, treating patients that suffer heart disease and/or heart attack is not the same as treating patients specifically for those conditions.  Dr. Newman's affidavit does not indicate he treats his patients for the conditions of heart disease and/or heart attack.  As such, his affidavit does not affirmatively establish that he is qualified to render an opinion on the cause of Mr. Moore's heart attack.

{¶35} Furthermore, assuming arguendo that Dr. Newman was qualified as an expert under the Rules of Evidence, his testimony does not establish direct and proximate cause.  Dr. Newman testified as follows in his deposition during cross-examination:

Q:          So that- - because you could not rule out, for example, smoking as being the cause of his myocardial infarction, the fact is Mr. Moore could just have easily have had a myocardial infarction if he was - - had a history of coronary disease, was a smoker or had high blood pressure even without the stress?

A:          Yes.

Q:          Well, what's the scientific basis that underlies the contention and fact that the stress had some role to play in this case?

A:          I guess it's commonly known that stress increases adrenaline, and we talked about that; that you're going to get an increased heart rate, potentially making the heart an ineffective pump, which would cause just a generalized decrease in oxygen and nutrients throughout the body; that stress would increase the stickiness of platelets, which would be the first cells to cause problems with a blood clot or a shower of emboli.  Those would be the major factors. That's why people take aspirin, to cut down on platelet stickiness.

Q:          Okay.

A:          And the stress increases the stickiness.

Q:          But in terms of this May 27, 2011 event with Mr. Moore-

A:          Uh-huh.

Q:          - -it's truly speculative to assert that this actually happened in his case, that the stress played any part in it, isn't it?

A:          Yes.

Yet, Dr. Newman's affidavit states in pertinent part:

7.     It is my opinion that the death of Dennis Moore was accelerated by a substantial period of time as a direct and proximate result of his workplace stress.

8.      Although Dennis P. Moore suffered from hypertension, high cholesterol, a history of smoking and a possible family history of heart disease, his high level of work-related stress was also a substantial causative factor for his heart attack.

9.      This opinion, as well as all other opinions expressed herein, are expressed within a reasonable degree of medical certainty and probability.

{¶36} In *Aiken v. Industrial Commission of Ohio, supra,* the court held that the evidence "must be such as to remove the case from the realm of speculation and conjecture; there must be competent evidence tending to show a proximate causal connection * * *." Appellant's own expert agreed in his deposition testimony that it is "truly speculative to assert that this actually happened in this case, that stress played any part" in Mr. Moore's heart attack. Then Appellant submitted an affidavit from Dr. Newman which stated that Mr. Moore's high level of stress "was also a substantial causative factor for his heart attack." However, at no time, neither in his deposition testimony nor in his affidavit, was Dr. Newman able to definitively state that Mr. Moore would not have suffered the heart attack "but for" the alleged unusual workplace stress. As such, we cannot find by a preponderance of the evidence that a direct or proximate causal relationship existed between the alleged stress and the heart attack.

{¶37} While we recognize the Moore family has suffered a tragic loss, the evidence put forth in this record does not show that Dr. Newman was qualified to render an opinion as to the cause of Mr. Moore's heart attack and subsequent

death.  Moreover, Dr. Newman's opinion did not remove the proximate cause issue from the realm of speculation.  For the foregoing reasons, we find no merit to Appellant's argument.  As such, we overrule the sole assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.:  Concur in Judgment Only.


For the Court,


BY:    _____
Matthew W. McFarland,
Administrative Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**