ABELE, J.
{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment that (1) partially entered summary judgment in favor of PNC Bank, National Association,[1] plaintiff below and appellant herein, in its foreclosure action against Joseph R. Frazier and Sonja L. Frazier, defendants below and appellee herein, and (2) granted appellee's motion to dismiss Sonja L. Frazier, now deceased, pursuant to Civ.R. 25(A)(1).[2]
{¶ 2} Appellant assigns the following errors for review:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED BY PRECLUDING REFORMATION OF THE MORTGAGE TO GIVE PNC A FIRST AND BEST LIEN UPON THE RESIDENTIAL PARCEL."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON THE CLAIM TO REFORM THE MORTGAGE."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED BY DENYING PNC'S MOTION TO SUBSTITUTE SONJA FRAZIER'S ESTATE FOR MS. FRAZIER AND DISMISSING THE CLAIMS AGAINST MS. FRAZIER."
{¶ 3} The Fraziers jointly owned two adjacent parcels located at 918 Lunbeck Road-a 1.02 acre residential lot and a 0.559 acre vacant lot. The parcel number of the residential lot is 24-1611274-000. The parcel number of the vacant lot is 24-1611577-000.
{¶ 4} In 2001, the Fraziers applied for a mortgage with National City Bank. The Fraziers completed a Uniform Residential Loan Application that (1) listed the property address as "918 Lunbeck Rd., Chillicothe, OH 45601," (2) indicated the purpose of the loan was to refinance, (3) stated that the property would be the primary residence, (4) documented that the property was acquired and "[b]uilt" in 1974, (5) that improvements in the form of "deck, decorating, [c]arpet" were made, and (6) that the property was "1Fam."
{¶ 5} An appraisal report similarly reflected that the property involved residential property. The appraisal (1) describes the property as consisting of 1.02 acres, with electricity, water, and a septic system, (2) states that an interior and exterior *315 inspection were performed, (3) describes the property as a one-story, detached building consisting of "WD, ALUM, BRK," with a "COMP SHGL" roof surface, and (4) includes the parcel number of the residential lot. The appraisal also includes photographs of the "subject property" that show the appraised property is a building. The appraisal also includes a floorplan that illustrates the layout of the building, with square footage calculations. The building consists of three bedrooms, a bathroom, a kitchen, a dining room, a living room, a deck, and a patio. The square footage is listed as "1100." The appraisal estimated the property value as $138,000.
{¶ 6} The Fraziers also signed a "Survey Affidavit." Their affidavit states that they own 918 Lunbeck Road as shown on the attached survey and that the survey "correctly represents the layout and improvements on the Property." The attached survey lists two parcels: (1) a 1.02 acre tract; and (2) a 0.559 acre tract. The illustration of the 0.559 acre tract includes the following writing: "Per owner 0.559 acre tract not included in mortgage."
{¶ 7} The Fraziers signed a note that listed the property address as "918 Lunbeck Rd., Chillicothe, Ohio 45601" and that promised to repay $107,000. The mortgage stated that the Fraziers agreed to "mortgage, grant and convey * * * the following described property * * * 918 Lunbeck Rd., Chillicothe, Ohio 45601." The parcel identification number was left blank. The mortgage included an occupancy covenant that stated the Fraziers would use the mortgaged property as their "principal residence."
{¶ 8} The legal description attached to the mortgage reads:
EXHIBIT A-LEGAL DESCRIPTION
Situate in the State of Ohio, County of Ross, Township of Scioto, being part of the remainder of a 23 acre tract and all of the remainder of a 0.71 acre tract as conveyed to Timothy L. Webb and Janet R. Webb by deed of record in Vol. 479 P. 165 Recorder's Office, Ross County, Ohio and being more particularly bounded and described as follows:
Beginning at a point ¾? i.p. (fnd) at the southwest comer of a 1.02 acre tract as conveyed to Joseph R. Frazier and Sonja L. Frazier by deed of record in Vol. 384 Pg. 110 Recorder's Office, Ross County, Ohio, said point also being at a northeasterly corner of the remainder of the said 23 acre tract;
Thence N 42° 39'10? E a distance of 200.00' (passing a ¾? I.P. fnd at 168.50') along the southerly line of the said 1.02 acre tract, and along a northerly line of the remainder of the said 23 acre tract, and also along a northerly line of the remainder of the said 0.71 acre tract to a point in the centerline of a small stream, said point being in a westerly line of the remainder of 65.1 acre tract as conveyed to Ray E. Depugh and Joan Depugh by deed of record in vol. 305 Pg. 254 Recorder's Office, Ross County, Ohio;
Thence S 18° 00' 00? E a distance of 117.91' along the centerline of the said stream, and along an easterly line of the remainder of the said 0.71 acre tract, and also along the westerly line of the remainder of the said 65.1 acre tract to a point at the southeast comer of the said 0.71 acre tract, said point also being the northwest comer of a 1.03 acre tract as conveyed to Ray E. Depugh and Joan R. Depugh by deed of record in Vol. 384 Pg. 106 Recorder's Office, Ross County, Ohio;
Thence along the centerline of the said stream, and along westerly lines of the said 1.03 acre tract, and also along easterly lines of the remainder of the said 23 acre tract by the following described (2) courses:
*316 S 18° 00' 00? E a distance of 34.39' to a point;
S 32° 00' 00? E a distance of 40.68' to a point;
Thence through the tract of which this is a part by the following described (2) courses;
S 54° 22' 55? W a distance of 109.14' (passing a 5/8? i.p. set at 30.00') to 5/8? i.p. (set);
S 50° 18' 06? w a distance of 150.00' to the point of beginning containing 0.559 acres more or less, subject to all easements, restrictions, and rights-of-way- of record.
This Description was prepared from a field survey made by Ronald C. Donahue Jr. in August 1991.
The bearings contained herein are based on the bearings of the said 1.02 acre tract as conveyed to Joseph and Sonja Frazier.
Parcel Number: 24-1611274-000 and 24-1611577.000
Commonly Known As: 918 Lunbeck Road, Chillicothe, Ohio 45601
{¶ 9} Subsequently, the Fraziers defaulted on their note and mortgage obligations. Thus, in 2009 National City filed a foreclosure complaint. National City attached to its complaint the mortgage with the above legal description. A preliminary report revealed, however, that the metes and bounds description[3] attached to the mortgage described the vacant lot. National City later amended the complaint to request that the court reform the mortgage to include the metes and bounds description of the residential lot. National City alleged that the legal description is "incomplete" and resulted from a "scrivener's error and mutual mistake of fact." National City thus asserted that it is entitled to have the mortgage reformed in order to include the metes and bounds description of the residential property.
{¶ 10} National City subsequently filed a summary judgment motion and argued that the evidence shows that the parties intended to encumber both the residential and vacant lots, but by mutual mistake, the metes and bounds description attached to the mortgage did not describe both properties. National City (1) pointed out that the Fraziers' loan application clearly indicates that both the vacant lot and the residential parcel were intended to be encumbered by the mortgage; (2) claimed that the property appraisal shows that both parcels were intended to be encumbered by the mortgage; and (3) asserted that the amount of the mortgage-$107,000-demonstrates that the parties intended to encumber the residential lot. National City argued that a $107,000 mortgage for a 0.559 acre vacant parcel is not reasonable.
{¶ 11} The case later was stayed pending bankruptcy proceedings. During the stay, Mrs. Frazier died. On December 11, 2015, shortly after the court reactivated the proceedings, the Fraziers' counsel filed a notice of suggestion of death.
{¶ 12} In January 2016, the Fraziers filed a combined memorandum in opposition to National City's summary judgment motion and a cross-motion for partial summary judgment. Although the Fraziers did not dispute National City's right to judgment on the note and to foreclose upon the mortgage, they did however dispute National City's reformation claim. The Fraziers asserted that no genuine issues of material fact exist as to whether National *317 City's failure to include the legal description of the residential property constitutes inexcusable negligence so as to preclude its reformation claim. They thus claimed that they are entitled to judgment as a matter of law with respect to National City's reformation claim.
{¶ 13} The Fraziers attached appellee's affidavit to support their cross-summary judgment motion. In his affidavit, appellee attests that he and Mrs. Frazier "were aware at the closing that [National City] apparently chose to omit the residential parcel from the property described in the mortgage deed and that thereafter they quit-claimed their interest in the residential parcel to their children as part of their estate planning."[4]
{¶ 14} In response, National City argued that the evidence shows that the parties obviously intended to encumber the residential property. National City asserted that the mortgage includes the property address and the parcel number for the residential parcel. National City recognized that the metes and bounds description attached to the mortgage appeared to describe only the vacant parcel, but claimed that the mortgage clearly and unambiguously includes the street address and the permanent parcel number for the residential parcel. National City thus contended that the mortgage shows that the parties intended to encumber the residential parcel.
{¶ 15} On October 7, 2016, appellee filed a motion to dismiss National City's complaint based upon its failure to comply with Civ.R. 25(A). Appellee asserted that National City's failure to file a motion to substitute within ninety days of the notice of suggestion of Mrs. Frazier's death mandated a dismissal of the complaint.
{¶ 16} On November 3, 2016, appellant (PNC Bank) filed a combined motion for leave to file instanter a motion to substitute and a memorandum in opposition to appellee's motion to dismiss. Appellant asserted that the trial court should permit it to substitute the correct party in place of Mrs. Frazier instead of dismissing the complaint. Appellant argued that Civ.R. 6(B) permits the court to extend the ninety-day time period set forth in Civ.R. 25(A) upon a showing of excusable neglect. Appellant contended that it did not file a motion to substitute within ninety days of the notice of suggestion of death because the parties had been engaged in settlement negotiations. Appellant also asked the court to substitute PNC Bank, National Association as the plaintiff in place of National City Real Estate Services, LLC.
{¶ 17} The trial court granted appellant's motion to substitute PNC Bank as the plaintiff, but denied appellant's request to substitute the proper party in place of Mrs. Frazier. The court found that appellant did not file the motion to substitute in a timely manner and dismissed appellant's claims against Mrs. Frazier. The court did not address appellant's claim of excusable neglect in failing to file the motion within the ninety-day time period set forth in Civ.R. 25(A).
{¶ 18} The trial court also entered summary judgment in appellant's favor regarding its foreclosure claim, but denied it summary judgment on the reformation claim. Rather, the court determined that appellee is entitled to summary judgment on the reformation claim. The court found *318 that even if genuine issues of material fact remain as to whether there was a mutual mistake, there is no genuine issue of material fact as to appellant's inexcusable negligence. The court therefore determined that appellant's inexcusable negligence precluded reformation and granted appellant summary judgment with the right to foreclose upon the vacant property only. This appeal followed.
I
{¶ 19} In its first assignment of error, appellant asserts that the trial court erred by overruling its summary judgment motion concerning its claim to reform the mortgage. Appellant claims that no genuine issues of material fact remain as to whether the court should reform the mortgage. Appellant argues that the evidence demonstrates that the parties were mutually mistaken as to the legal description attached to the mortgage. Appellant contends that both parties mistakenly believed that the legal description attached to the mortgage described the residential lot, when the metes and bounds description actually described the vacant lot. Appellant thus claims that the trial court should have reformed the mortgage so as to include the metes and bounds description of the residential property.
{¶ 20} Appellee argues that the trial court correctly entered judgment in his favor regarding appellant's reformation claim. He contends that even if genuine issues of material fact remain as to whether the parties intended to encumber the residential parcel, appellant's inexcusable negligence in failing to recognize the mistake precludes reformation.
{¶ 21} As we explain below, we (1) agree with appellant's argument that genuine issues of material fact remain regarding its reformation claim, and (2) disagree with appellee's argument that appellant's conduct constitutes inexcusable negligence so as to preclude reformation of the mortgage.
A
{¶ 22} We initially note that appellate courts conduct a de novo review of a trial court's summary judgment decision. E.g., Argabrite v. Neer , 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14 (stating that "court reviews a grant of summary judgment de novo"); Bohlen v. Anadarko E & P Onshore, L.L.C. , 150 Ohio St.3d 197, 2017-Ohio-4025, 80 N.E.3d 468, ¶ 10 ; Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. Argabrite at ¶ 14 (explaining that de novo review means court "will consider the evidence as if for the first time-using the standard set out in Civ.R. 56"); e.g., Greene v. Partridge, 2016-Ohio-8475, 78 N.E.3d 197 (4th Dist.), ¶ 13 ; Brown v. Scioto Bd. of Commrs. , 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993) ; Morehead v. Conley , 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786 (4th Dist.1991). To determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as well as the applicable law. Snyder v. Ohio Dept. of Nat. Resources , 140 Ohio St.3d 322, 2014-Ohio-3942, 18 N.E.3d 416, ¶ 2.
B
{¶ 23} Civ.R. 56(C) provides in relevant part:
* * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations *319 of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
{¶ 24} Thus, pursuant to Civ.R. 56, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. E.g., Bohlen at ¶ 10, citing Temple v. Wean United, Inc. , 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977) ; Snyder at ¶ 20 ; Vahila v. Hall , 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164 (1997).
{¶ 25} The purpose of Civ.R. 56"is to enable movement beyond allegations in pleadings and to analyze the evidence so as to ascertain whether an actual need for a trial exists. Because it is a procedural device to terminate litigation, summary judgment must be awarded with caution." Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau , 88 Ohio St.3d 292, 300, 725 N.E.2d 646 (2000) (citations omitted). Accordingly, a court that is reviewing a summary judgment motion must construe all reasonable inferences that can be drawn from the evidentiary materials in a light most favorable to the nonmoving party. Moore v. E.I. DuPont de Nemours Co. , 4th Dist. Pickaway No. 15CA12, 2015-Ohio-5331, 2015 WL 9305351, ¶ 20, citing Hannah v. Dayton Power & Light Co. , 82 Ohio St.3d 482, 485, 696 N.E.2d 1044 (1998), and Turner v. Turner , 67 Ohio St.3d 337, 341, 617 N.E.2d 1123 (1993). Moreover, a court must not "consider either 'the quantum' or the 'superior credibility' of evidence." McGee v. Goodyear Atomic Corp. , 103 Ohio App.3d 236, 242, 659 N.E.2d 317 (4th Dist. 1995). "The purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist. * * * Thus, a court should not pass upon the credibility of witnesses or weigh the relative value of their testimony in rendering summary judgment." Id. at 242-243, 659 N.E.2d 317 (citation omitted.); see also Koeth v. Time Savers, Inc. , 11th Dist. Geauga No. 99-G-2211, 2000 WL 688826 (May 26, 2000) ("It is not the province of the trial court in a summary judgment exercise to either weigh the evidence before it, or to accept one party's interpretations of that evidence in toto.").
{¶ 26} With these principles in mind, we now review whether the trial court correctly determined that no genuine issues of material fact remain regarding appellant's reformation claim and that appellee is entitled to judgment as a matter of law concerning that claim.
C
{¶ 27} " 'Reformation is an equitable remedy that allows a court to change the language in a contract where the parties' true intentions have not been expressed due to a "mutual mistake"-meaning a common mistake by all the parties to the contract.' "
*320 Wells Fargo Bank v. Mowery , 187 Ohio App.3d 268, 2010-Ohio-1650, 931 N.E.2d 1121 (4th Dist.2010), ¶ 24, quoting Huber v. Knock , 1st Dist. Hamilton No. C-080071, 2008-Ohio-5900, 2008 WL 4891562, ¶ 6 ; accord Amsbary v. Brumfield , 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71 (4th Dist.), ¶ 13 ; Patton v. Ditmyer , 4th Dist. Nos. 05CA12, 05CA21, and 05CA22, 2006-Ohio-7107, 2006 WL 3896780, ¶ 27 ; e.g., Bellish v. C.I.T. Corp. , 142 Ohio St. 36, 43, 50 N.E.2d 147, 151, 26 O.O. 234 (1943) ("A court of equity may reform a written instrument upon the ground of mistake of fact."); Wagner v. Natl. Fire Ins. Co. , 132 Ohio St. 405, 412, 8 N.E.2d 144, 148, 8 O.O. 216 (1937) ("Reformation is available where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them."). The purpose of reformation is not, however, to create a new contract between the parties. Wagner , 132 Ohio St. at 412, 8 N.E.2d 144. Rather, the purpose of reformation is "to make the writing conform to the real intention of the parties." Id. ; Delfino v. Paul Davies Chevrolet, Inc. , 2 Ohio St.2d 282, 286, 209 N.E.2d 194 (1965) (stating that the purpose of reformation is to "cause an instrument to express the intent of the parties as to the contents thereof"); Castle v. Daniels , 16 Ohio App.3d 209, 212, 475 N.E.2d 149 (2nd Dist.1984) ("The province of reformation is to make a writing to express the agreement that the parties intended it should"); e.g., CitiMortgage, Inc. v. Brown , 2015-Ohio-5347, 45 N.E.3d 258, ¶ 28 (1st Dist.). Accordingly, "whenever a writing fails to conform to [the contracting parties'] intent equity will reform it to make it conform, unless there is some overruling equity." Hartman v. Tillett , 86 Ohio App. 20, 24, 89 N.E.2d 613 (1st Dist.1948).
{¶ 28} A party seeking reformation of a written instrument must prove by clear and convincing evidence that the mistake regarding the instrument was mutual. Wagner , 132 Ohio St. at 412-413, 8 N.E.2d 144 ("[T]he law attaches a certain sanctity to written instruments and therefore reformation is available only when the mutual mistake is shown by clear and convincing evidence."); accord Stewart v. Gordon , 60 Ohio St. 170, 53 N.E. 797 (1899), paragraph one of the syllabus; Amsbary at ¶ 13 ; Galehouse Constr. Co. v. Winkler , 128 Ohio App.3d 300, 303-04, 714 N.E.2d 954 (9th Dist.1998). Clear and convincing evidence is the degree of evidence necessary to elicit in the mind of the trier of fact a firm belief or conviction as to the allegations to be established. E.g., In re Haynes , 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).
{¶ 29} Additionally, to be entitled to reformation based upon a mutual mistake, the mistake must be material. Reilley v. Richards , 69 Ohio St.3d 352, 352-353, 632 N.E.2d 507 (1994). "A mistake is material to a contract when it is 'a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.' 1 Restatement of the Law 2d, Contracts (1981), 385, Mistake, Section 152(1). Thus, the intention of the parties must have been frustrated by the mutual mistake." Id.
{¶ 30} Moreover, while " 'the term "mistake" carries with it the idea of fault * * *, the mere fact that a mistake was made in an instrument does not show such negligence as to bar the right of reformation, for it that were so a court of equity never could interfere.' " Hartman , 86 Ohio App. at 23, 89 N.E.2d 613, quoting 45 American Jurisprudence, 632, Section 78; accord Greenfield v. Aetna Cas. & Sur. Co. , 75 Ohio App. 122, 130, 61 N.E.2d 226 (1st Dist.1944) ; e.g., Mowery at ¶ 37 ;
*321 Crout v. D.E.R. Bldg. Co. , 12th Dist. Brown No. CA2000-12-039, 2001 WL 1402734, *5. Accordingly, a party seeking reformation need not show that it is " 'wholly free from fault.' " Hartman at 23, 89 N.E.2d 613, quoting 45 American Jurisprudence, 632, Section 78. " '[N]egligence that is a mere inadvertence does not preclude relief. Nor will relief be denied where, in the circumstances, the negligence of the party seeking relief is excusable.' " Id. , quoting 45 American Jurisprudence, 632, Section 78; Foley v. Lipka , 4th Dist. Highland No. 673, 1988 WL 118701 (Nov. 3, 1988), *3 ("it is an established principle that excusable negligence in executing a contract will not prevent reformation in order to make the contract conform to the intention of the parties."); accord 27 Williston on Contracts, Section 70:49 (4th ed.) (explaining that the equitable remedy of reformation exists because "everyone makes simple, nonmalicious, nonculpable mistakes," but that equity will not intervene if the party was grossly negligent). Reformation ordinarily will be precluded, however, if the party's negligence constitutes " 'a violation of a positive legal duty,' " or is otherwise inexcusable. Hartman at 23, 89 N.E.2d 613, quoting 45 American Jurisprudence, 632, Section 78; accord CIGNA Corp. v. Amara , 563 U.S. 421, 443, 131 S.Ct. 1866, 1881, 179 L.Ed.2d 843 (2011), quoting 3 S. Symons, Pomeroy's Equity Jurisprudence Pomeroy, Sections 856, 856b, at 334, 340-341 (5th ed.1941) (observing that reformation ordinarily permissible "even if the 'complaining part[y]' was negligent in not realizing its mistake, as long as its negligence did not fall below a standard of 'reasonable prudence' and violate a legal duty"); CitiMortgage, Inc. v. Brown , 1st Dist., 2015-Ohio-5347, 45 N.E.3d 258, ¶ 31 (concluding bank inexcusably negligent when "simple examination of the mortgage" would have revealed failure to include a party's name); see Reilley , 69 Ohio St.3d at 352-353, 632 N.E.2d 507 (1994), citing Irwin v. Wilson , 45 Ohio St. 426, 15 N.E. 209 (1887) (stating that Irwin "held that a buyer is entitled to rescission of a real estate purchase contract where there is a mutual mistake as to a material part of the contract and where the complaining party is not negligent in failing to discover the mistake"); Byers v. Chapin , 28 Ohio St. 300, 304 (1876) ("It is too well settled to cite authorities to the proposition, that a contract founded on mistake of a material fact may be rescinded, the party not being guilty of negligence or laches."); id. ("if defendant, at the time 'of the giving of the note, knew of that fact, or is justly chargeable, under all the circumstances of the case, with a want of reasonable diligence to ascertain it, and to guard against the alleged mistaken belief,' the defense fails."); 27 Williston on Contracts, Section 70:49 ("Conduct sufficient to bar reformation must go beyond mere oversight, inadvertence, or mistake and, instead, must amount to a degree of inattention that is inexcusable under the circumstance.").
The Restatement of Contracts also indicates that a party's negligence does not necessarily preclude equitable relief. "A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing."
Haven House Manor, Ltd. v. Gabel , 6th Dist. Wood No. WD-02-073, 2002-Ohio-6750, 2003 WL 22946422, ¶ 16, quoting 1 Restatement of the Law 2d, Contracts (1981) 416, Mistake Section 157.
{¶ 31} Consequently, a mistaken party's failure to exercise reasonable care generally does not preclude reformation. "Indeed, since a party can often avoid a mistake by the exercise of such care, the *322 availability of relief would be severely circumscribed if that party were to be barred by its own negligence." 27 Williston on Contracts, Section 70:48. "[I]n extreme cases ," however, "the mistaken party's fault is a proper ground for denying relief for a mistake that otherwise could have avoided." Id. (emphasis added). Under Ohio law, "the critical degree of fault is * * * described as [inexcusable] negligence." Id. Under the Restatement, "the rule is stated in the more positive terms of good faith and fair dealing."[5] Id.
{¶ 32} Furthermore, reformation, at its core, is an equitable remedy. Its application thus "depends upon the facts and circumstances of each case and is largely concerned with the prevention of frauds and relief against mistakes." ABN AMRO Mtge. Group v. Kangah , 126 Ohio St.3d 425, 2010-Ohio-3779, 934 N.E.2d 924, ¶ 11 (discussing another equitable remedy-equitable subrogation); see Wagner , 132 Ohio St. at 413, 8 N.E.2d 144 (noting that reformation may be warranted due to fraud or mutual mistake); Fid. & Cas. Co. of New York v. Hartzell Bros. Co. , 109 Ohio St. 566, 569, 143 N.E. 137 (1924) (pointing out that reformation permissible when, "through fraud or mistake, the [written instrument] did not embody the actual contract mutually entered into between the parties"); Baltimore & O.R. Co. v. Bing , 89 Ohio St. 92, 105 N.E. 142 (1913) ("The only grounds for reforming an instrument are those of fraud or mutual mistake."). Therefore, the concept of negligence in the reformation context is "far from being a static concept subject to mechanical application, [but rather] is one that requires careful consideration of the facts to determine if the party seeking reformation of a deed is, both in light of personal action taken and as a matter of equity, entitled to such relief." 27 Williston on Contracts, Section 70:49. For instance, when "a party acknowledges that it made a mistake, while the other party clearly knew or should have known of the mistake, then to prevent reformation of the pertinent documents due to mistake would be inequitable and unjust. This is particularly true where the unmistaken party has not changed any position in reliance on the mistake. Note, however, that the court will not allow the unmistaken party to improve its position because of the mistake." Id. (footnote omitted). Accordingly, courts should carefully consider the unique equities of each situation when determining whether a party is entitled to have a written instrument reformed.
{¶ 33} Castle v. Daniels , supra , illustrates how these principles apply in the deed reformation context. In Castle , the trial court concluded that reformation of a deed was appropriate when the evidence showed that the parties were mutually mistaken as to the property conveyed. In Castle , the grantors conveyed a lot to the grantees by warranty deed. The deed described the property conveyed as the entire lot, which included a hay field in the northeast corner of the lot upon which sat a barn. The grantors asserted that the parties did not intend the real estate transaction to include the hay field and barn, but the grantees disputed this assertion. The deed also described property that was owned by a third party, Lucy McClung. The grantees conceded that the parties did not intend McClung's property to be part of the transaction.
*323 {¶ 34} A survey plat showed that the hay field and barn were not part of the lot, and neither was McClung's property. The grantees claimed that the survey plat accurately depicted the property the parties intended to convey. Testimony existed that the grantees were aware of the lot boundaries, but the grantees disputed this fact. The grantors stated that they showed the grantees the boundaries before closing the real estate transaction and explicitly informed the grantees that the disputed property was not included. The record also contained evidence to show that the grantees acted inconsistently with their claim to the disputed property.
{¶ 35} After the trial court entered judgment granting the grantors' request to reform the deed, the grantees appealed. On appeal, the grantees argued that (1) the grantors failed to show, by clear and convincing evidence, that the parties were mutually mistaken as to the land conveyed, and (2) any mistake in the deed resulted from the grantors' negligence, which precluded their reformation claim. The court of appeals, however, disagreed with the grantees and affirmed the trial court's judgment.
{¶ 36} The appellate court first determined that the evidence, although conflicting, supported the trial court's finding that the parties were mutually mistaken as to the land that the deed conveyed. The court pointed out that the credibility of the parties' assertions was a matter reserved to the trial court.
{¶ 37} The court further recognized that, at trial, the grantees disputed that a mutual mistake occurred, but stated:
"[T]he mere fact that the parties at the time of trial testify differently as to what their agreement was does not necessarily mean that there was no agreement between them, nor does it necessarily mean that they were not mutually mistaken concerning the expression of their agreement in the instrument; in this respect, it has been pointed out that if the fact alone that the parties testify differently at the trial would prevent a finding that there was an agreement between the parties, a court could never determine whether there was a contract in a lawsuit where the parties disagree and testify differently." 13 Ohio Jurisprudence 3d (1979) 363, Cancellation, etc. of Instruments, Section 76.
Thus, where an action in reformation is commenced, credible testimony concerning the conduct of the parties, any course of dealing between them, and the method of handling the specific transaction in question are entitled to great weight in determining the ultimate facts; to wit, the agreement. Neff v. Ulman (Oct. 23, 1981), Darke App. Nos. 1027 and 1028, unreported (citing Haller v. Holthouse [App.1952], 68 Ohio Law Abs. 156, 121 N.E.2d 662 ).
Id. at 212, 475 N.E.2d 149.
{¶ 38} The court also rejected the grantees' argument that the grantors' negligence precluded their reformation claim. The court observed that a metes and bounds "description in a deed often contains somewhat confusing language making repeated references to various landmarks and directions which cannot be fully comprehended without the aid of a plat map." Id. at 213, 475 N.E.2d 149. The court thus determined that the absence of simple, clear, and easily understandable language in the legal description leant support to the conclusion that a person of ordinary intelligence might not readily comprehend the legal description. Id.
{¶ 39} The court further pointed out that at closing, "both the plat map and the deed were present." Id. The court found that "[o]f the two documents the plat is much more clear and lends itself to easy *324 comprehension" and that "[i]t [wa]s therefore understandable how each party may have been misled into believing the deed described that which was intended to be conveyed." Id. The court additionally observed that the parties' "outward manifestations indicate both parties believed that the intended conveyance was different from that contained in the deed." Id. The court also determined that "neither party was at greater fault for the error, [but] rather it appears the deed contained the improper description as a result of a mutual mistake." Id.
{¶ 40} The court considered the equities of the situation and noted that the grantors "had experience in real estate transactions," but agreed with the trial court's decision "not to penalize [them] because of their prior experience." Id. One of the grantors "had been involved in real estate for nearly twenty years." Id. This grantor claimed, however, that his partner handled most of the real estate transaction, "and as such [the grantor] could not read deeds very well." Id.
{¶ 41} The appellate court thus concluded that the grantors "were justified in their actions in view of the circumstances surrounding this transaction." Id. The court found no reason to disturb the trial court's decision granting reformation of the deed, "[i]n light of the overwhelming evidence indicating the [grantees] did not believe they were obtaining the disputed land in the conveyance." Id. The court thus affirmed the trial court's judgment reforming the deed based upon mutual mistake.
{¶ 42} In Mowery , we concluded that a mortgage lender's failure to discover that the legal description attached to the mortgage described a vacant lot constituted inexcusable negligence and that the equities of the situation did not favor reformation of the mortgage. We thus determined that the lender's inexcusable negligence precluded reformation. In Mowery , as part of a divorce, a husband and wife agreed that the wife would receive the parties' residential lot, and that the husband would receive the parties' vacant lot. However, the transaction did not occur as expected, but instead, the parties inexplicably and mistakenly transferred the residential lot to the husband and the vacant lot to the wife. Neither party apparently was aware of the mistake.
{¶ 43} Sometime after the parties' divorce, the wife obtained a mortgage on what she thought was the residential property. The legal description attached to the mortgage, however, described the vacant lot, which was the property the wife actually owned. The lender also apparently believed that the mortgage applied to the residential lot. The record did not contain any evidence that the lender performed a survey, but an appraisal of the residential lot, including information about the house, was completed.
{¶ 44} Wells Fargo later acquired the note from the original lender, and the wife continued making payments until her death. Before Wells Fargo acquired the note, it did not order a survey of the mortgaged property.
{¶ 45} Shortly after the wife's death, the mortgage went into default, and Wells Fargo filed a foreclosure action. Before the sheriff's sale occurred, a sheriff's deputy visited the property and discovered that the property was a vacant lot. The sheriff's office then notified Wells Fargo of its discovery. Wells Fargo ordered a survey of the foreclosed property, which confirmed that the mortgage described the vacant lot. Wells Fargo subsequently filed a complaint for declaratory judgment and reformation of the mortgage. The trial court denied Wells Fargo's request for equitable relief.
*325 {¶ 46} On appeal, we concluded that the original lender's negligence, which we imputed to Wells Fargo, was not excusable and thus precluded reformation. Id. at ¶ 38 and ¶ 39. We explained:
The mortgage included the legal description of the undeveloped parcel, and [the original lender] was in the mortgage business. Therefore, it was not excusable for [the original lender] to have believed the mortgage actually applied to any property other than the undeveloped parcel. A sheriff's deputy discovered that the undeveloped parcel is a vacant lot simply by visiting the property. Had [the original lender] undertaken even a cursory amount of due diligence, it would have discovered the true nature of the undeveloped parcel. A mortgage company's failure to learn the most basic facts about a mortgaged property cannot be excusable negligence.
Id. at ¶ 38.
{¶ 47} We recognized that our holding meant Wells Fargo would receive less from foreclosing upon the vacant lot than it had expected it would receive if it had been permitted to foreclose upon the residential lot. We nevertheless determined that "the situation is not entirely inequitable." Id. at ¶ 40. We pointed out that the heirs would lose their rights to the vacant lot and that Wells Fargo still would receive funds upon sale of the vacant lot. We further determined that "Wells Fargo purchased a bad deal from [the original lender]" and that "a party is not entitled to equitable relief simply because of a bad bargain." Id.
{¶ 48} After our review of the case sub judice, we do not believe Mowery controls the outcome here, but rather, we find it distinguishable. In Mowery , the original lender had not performed a survey and a sheriff's deputy discovered the mistake simply by visiting the property. In the case at bar, however, the original lender performed an appraisal of the property, and the Fraziers signed a survey affidavit with an attachment that illustrated the scope of the property intended to be encumbered. The attachment very clearly depicts the residential property and explicitly states that the vacant lot is not included in the mortgage "per the owner." For appellee to claim otherwise thus appears specious.
{¶ 49} Furthermore, our decision in Mowery does not reveal what other descriptors the mortgage contained. For instance, it is not clear whether the mortgage included the correct street address or parcel number of the residential lot and simply mistakenly attached the metes and bounds description of the vacant lot, or whether the mortgage did not list any street address or parcel number. The absence of either the street address or parcel number would appear to lend greater support to our conclusion in Mowery that the lender was inexcusably negligent. Additionally, although we pointed out that Wells Fargo did not order a survey before obtaining the note from the original lender, we do not believe that our decision means that a lender is inexcusably negligent simply because it fails to conduct a survey of each property subsequently obtained from another lender. We thus believe that Mowery is limited to the specific factual situation presented and that those same facts do not exist in the case sub judice. Thus, we do not believe that appellant's negligence in the case at bar falls within the class of "extreme cases" involving a mortgage lender's inexcusable negligence. See Williston, supra. Consequently, we do not believe that Mowery controls the outcome of this appeal.
{¶ 50} Instead, we believe that Castle v. Daniels demonstrates that, even though the bank may have been negligent in failing to notice that the metes and bounds *326 description attached to the mortgage described the vacant land, the bank's negligence is not so inexcusable that reformation is barred. We first observe that metes and bounds descriptions of property, by nature, rarely are clear and concise, but instead "often contains somewhat confusing language making repeated references to various landmarks and directions which cannot be fully comprehended without the aid of a plat map." Castle , 16 Ohio App.3d at 213, 475 N.E.2d 149. In the case sub judice, the metes and bounds description spans ten paragraphs and makes repeated references to various landmarks, directions, and prior conveyances. Thus, we do not find that the metes and bounds description attached to the mortgage is so clear that anyone reviewing it would have known that it referred to the vacant lot and not the residential lot.
{¶ 51} Next, we point out that the legal description attached to the property, while describing the metes and bounds of only the vacant land, also lists the parcel numbers for both the residential and vacant lots and states that the property is "Commonly Known As: 918 Lunbeck Road, Chillicothe, Ohio 45601." Unlike a metes and bounds description, identifying property by parcel number and street address ordinarily "lends itself to easy comprehension." Id. Thus, from those numerical identifiers, one might reasonably conclude that the metes and bounds description describes the residential and vacant parcels. Consequently, both appellant and the Fraziers "may have been misled into believing" that the metes and bounds description encompassed the residential property.
{¶ 52} Appellee nevertheless claims that he and Mrs. Frazier did not intend to mortgage the residential property. As Castle makes clear, however, simply because a party testifies differently at the time of trial as to the agreement does not "necessarily mean that the[ parties] were not mutually mistaken concerning the expression of their agreement." Id. at 212, 475 N.E.2d 149.
{¶ 53} Moreover, the Fraziers' outward manifestations during the mortgage application process lends significant support to appellant's argument that they intended to mortgage the residential land. The Fraziers signed a Uniform Residential Loan Application that lists the property address as "918 Lunbeck Road." Next to the box titled, "Year Built," is written "1974." Obviously, vacant property is not "built." Thus, this document seems to clearly refute appellee's assertion that he did not believe he was applying for a loan to mortgage the residential premises.
{¶ 54} Additionally, the loan application states that the property will be the "Primary Residence." The loan application thus indicates that the Fraziers did not sign an application for a loan on vacant property.
{¶ 55} Furthermore, the property was appraised, and the appraisal describes a house, not vacant property. The appraisal (1) states that the site area is 1.02 acres (the size of the residential lot), (2) indicates that an interior and exterior inspection were performed, (3) describes the property as a one-story with exterior walls consisting of "WD, ALUM, BRK" and a roof surface of "COMP SHGL," (4) contains a floorplan sketch of the residence that includes a deck, patio, kitchen, three bedrooms, dining room, bathroom, and living room, (5) lists square footage calculations, (6) shows pictures of a house and references an in-ground pool and a large deck, and (7) lists the parcel number as 24-1611274000, which is the residential lot. Obviously, this is not an appraisal of the vacant lot.
*327 {¶ 56} A "Survey Affidavit" that the Fraziers signed also attests that they owns 918 Lunbeck Road, as shown on the attached survey. The attached survey illustrates a 1.02 acre tract that contains an asphalt drive way, a pool, a deck, and a 0.559 acre tract that "per owner * * * [is] not included in [the] mortgage."
{¶ 57} Additionally, the mortgage that the Fraziers signed stated that the premises would be occupied as their principal residence. Thus, appellee's assertion that he and Mrs. Frazier did not believe the mortgage covered the residential property is questionable. While we note this case is before us upon appeal from a summary judgment motion and we do not judge the credibility of the evidence at this stage, ample items of documentary evidence appears to refute appellee's statements that he did not intend to mortgage the residential property. Nevertheless, we must remand this matter to the trial court so that it may engage in further proceedings in light of our decision. We believe that it would be inequitable to allow homeowners to escape mortgage obligations due to errors in a metes and bounds property description when all parties obviously knew what property was being mortgaged. See generally Irwin v. Wilson , 45 Ohio St. 426, 439, 15 N.E. 209 (1887) (stating that when mistake arises "from an innocent error in all the parties, natural justice forbids that the loss of one arising out of it should be the gain of the other"). Thus, in the case sub judice our review of the summary judgment material indicates that the parties arguably intended to encumber the residential lot. To find otherwise would be to relieve the Fraziers of the financial obligations to which they agreed.
{¶ 58} We further believe that Huntington Natl. Bank v. Betteley , 2015-Ohio-5067, 53 N.E.3d 860 (11th Dist.), provides additional support for our decision. In Betteley , the mortgage correctly identified the property address, but "instead of setting forth the parcel number corresponding to the [homeowners'] residential parcel, the * * * mortgage set forth the wrong parcel number." Id. at ¶ 30. On appeal, the Betteleys, the homeowners, asserted that their mortgage was void and not subject to reformation due to an inadequate legal description of the property. The appellate court determined that although "the bank's drafting failures * * * were careless and substantial," the failures did not "preclude reformation." Id. at ¶ 34. The court explained:
The Bettelys were not innocent, subsequent lien holders without notice of [the bank's] encumbrance as a result of its scrivener's errors. Instead, the Betteleys are seeking to avoid their obligations in spite of receiving the benefit of [the bank's] loan. Although the mortgage continued to include the erroneous parcel number, it always identified the correct mailing address and included the legal description for the residential parcel.
Further, the testimony and evidence presented at trial clearly and convincingly establishes that [the bank] and the Betteleys intended to encumber the same property, i.e., their residential parcel with mailing address 5012 River Road and parcel number 03A-079-0-00-044-0.
Id. at ¶ 34-35. The court also pointed out that "the Betteleys were fully aware of the mortgage on their property" and noted that "they made payments toward their mortgage obligation for more than seven years." Id. at ¶ 36.
{¶ 59} Similarly, in the case at bar (1) the mortgage and the legal description attached to the mortgage identified the property by its street address; (2) the legal description included the parcel numbers of *328 both the residential lot and the vacant lot; and (3) the Fraziers completed a loan application for a residential loan and the mortgage indicated that the encumbered property would be the primary residence. Thus, just as in Betteley , the evidence here strongly suggests that the Fraziers knew exactly what property the mortgage covered.
{¶ 60} In U.S. Bank N.A. v. Stocks , 2nd Dist., 2017-Ohio-8108, 98 N.E.3d 1217, the court refused to permit mortgagors to avoid a mortgage due to alleged defects in its execution. In Stocks , the bank asserted that the mortgagors cannot avoid a mortgage that they signed due to alleged errors in execution. The bank argued that the bankruptcy cases the mortgagors relied upon were "completely inapposite." Id. at ¶ 53. The bank contended that a mortgagor is not entitled to the same avoidance powers of "a bankruptcy trustee [who] stands in the shoes of 'a hypothetical bona fide purchaser as of the commencement of the case.' In re Burns , 435 B.R. 503, 507 (Bankr. S.D. Ohio 2010)." Id. The bank claimed that "[t]hese avoidance powers are not available to the mortgagor, and do not affect well-established Ohio law holding that mortgages are valid as between the mortgagor and the mortgagee." Id. The bank argued that because the mortgagors "are not bona fide purchasers or bankruptcy trustees, * * * [they] cannot avoid the Mortgage they admittedly signed and of which they received the benefit." Id.
{¶ 61} The appellate court appears to have agreed with the bank's argument and explained:
[A]s this Court has previously noted:
* * * "the Ohio Supreme Court has long held that '[a] defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud.' Citizens National Bank v. Denison (1956), 165 Ohio St. 89, 95, 133 N.E.2d 329." Texas Commerce Bank National Association v. Joseph , 8th Dist. Cuyahoga No. 81097, 2003-Ohio-995 [2003 WL 757015], ¶ 20 ; see also Seabrooke v. Garcia , 7 Ohio App.3d 167, 169, 454 N.E.2d 961 (9th Dist. 1982), citing Denison and noting that the "reasoning behind such a rule is to bind the parties to that which they intended. The purpose of the acknowledgement statute ( R.C. 5301.01 ) is to provide evidence of execution and authority for recordation. It is not to provide a way to escape for a party who later wishes to renege on his agreement." CitiMortgage, Inc. v. Kermeen , 2d District Darke No. 2011 CA 2, 2012-Ohio-1655 [2012 WL 1264488], ¶ 48.
While the acknowledgment in the Mortgage does not identify the Stockses as the individuals who appeared before the notary public and executed the Mortgage, the Stockses' admissions in their Answer make clear that they executed the Mortgage with the intent of mortgaging their interest in the property. The Stockses are bound by what they intended, and the Mortgage is accordingly valid as between them and U.S. Bank as the assignee of the Mortgage. Absent fraud, which is not alleged, the Stockses' subsequent arguments to the contrary are insufficient to meet their summary judgment burden.
Id. at ¶¶ 57-58.
{¶ 62} We likewise believe that mortgagors ordinarily should not be able to escape their mortgage obligations by claiming that the legal description fails to accurately describe the mortgagors' property. Instead, when the evidence shows that the legal description technically is inaccurate but none of the parties actually was mistaken as to which property was encumbered, a court usually should reform the mortgage to conform to the *329 parties' intent. See Mowery at ¶ 33, quoting 69 Ohio Jurisprudence 3d 88, Mortgages and Deeds of Trust (citations omitted) (" '[w]here a mortgage of real estate has been duly executed and recorded, a mistake in the attempted description of the mortgaged premises will be reformed or corrected in equity.' ").
{¶ 63} We also believe that our decision comports with the Ohio Supreme Court decisions that have addressed a lender's negligence in other contexts. For instance, in State, Dept. of Taxation v. Jones , 61 Ohio St.2d 99, 399 N.E.2d 1215 (1980), the court determined that the equities of the situation did not favor relief in the form of equitable subrogation. Instead, the court determined that the lender's "improvident business maneuvers" "led to its dilemma." Id. at 102 and 103, 399 N.E.2d 1215. The court explained:
Appellant controlled the disbursement of the funds, the filling out of all the forms, the date of the filing and even the hiring of the title company.
The appellant expressly told the title company not to file the second mortgage until instructed to do so, which was on December 29, 1976, approximately three months from the date of execution of the second mortgage. Fred C. Jones, title officer of Midland, indicated by his testimony that it is not usual to hold a mortgage "for this length of time."
Additionally, appellant went ahead and imprudently cancelled its own first mortgage in the amount of $31,500 in January 1977 without first having received any title guarantee from Midland, which title company was hired by the appellant.
Fred C. Jones testified further that the normal procedure is to allow the title company to cancel existing debts.
Appellant was made aware of the appellees' unusual debts to the accounting firm and also the Internal Revenue Service claim, but did nothing to inquire further as to any additional obligations.
Id. at 103, 399 N.E.2d 1215.
{¶ 64} In Jones , the evidence showed that the lender made conscious decisions that impaired its rights. In the case at bar, however, there is no evidence that the original lender made a conscious decision to exclude the metes and bounds description of the residential property. In fact, the evidence suggests that the lender intended to include the metes and bounds description of the residential property. We again point out that the legal description attached to the mortgage not only contains the metes and bounds description of the vacant lot, but it also lists the street address of the property, as well as the parcel number of the residential lot. The lender's failure to attach the correct metes and bounds description might constitute negligence, but we cannot state that it constitutes inexcusable negligence under the circumstances in the case at bar.
{¶ 65} In Reilley , supra , the Supreme Court determined that a purchaser of real estate seeking rescission was not negligent by failing to discover that the property he purchased was located in a floodplain. The court pointed out that although the purchaser was a lawyer, he did not have prior experience in real estate law, but instead, "was an unsophisticated party at the time of the transaction." Id. at 354, 632 N.E.2d 507. The court further noted that the purchaser's builder inspected the property but concluded that "he did not discover, and could not have discovered, the floodplain by looking at the property." Id. The court disagreed that the purchaser was negligent by failing to "hire engineers to discover the floodplain." Id.
{¶ 66} In the case sub judice, although the original lender and appellant *330 are sophisticated parties engaged in the mortgage business, we do not believe that sophisticated mortgage lenders necessarily are precluded from having mortgages reformed simply by virtue of their status as sophisticated mortgage-lending entities. Additionally, while the lender might have discovered the mistake if it had exercised more care, we do not think the lender's conduct rises above mere inadvertence or excusable negligence. In Washington Mut. Bank v. Hopkins , 10th Dist. Franklin No. 07AP-320, 2007-Ohio-7008, 2007 WL 4532679, for example, the trial court determined that the lender, "a very large, sophisticated bank * * * is charged with the knowledge of how to properly proceed in the refinancing arena," was not entitled to invoke the doctrine of equitable subrogation when the mistake was "easily discoverable," and when the lender's failure to discover the existence of another mortgage was "clearly negligent." Id. at ¶ 19. The appellate court, however, disagreed with the trial court that the lender's negligence precluded relief. The court explained that although the failure to discover the outstanding mortgage was an "obvious" mistake, the evidence failed to show that it was anything "more than 'ordinary mistake.' " Id. at ¶ 20. Compare Motorists Mut. Ins. Co. v. Columbus Fin., Inc. , 168 Ohio App.3d 691, 2006-Ohio-5090, 861 N.E.2d 605 (10th Dist.), ¶ 14 (determining that insurance company could not avoid contract due to mutual mistake when insurance company failed "to conform to the fair and reasonable standards of practice within the insurance industry" and was inexcusably negligent by breaching its duty to investigate the facts and "wholly fail[ing] to investigate with whom it was making the contract").
{¶ 67} As we previously explained, in the case at bar a cursory examination of the metes and bounds description attached to the mortgage might suggest that it described the residential parcel. The metes and bounds description spanned ten paragraphs, but the entire document comprising the legal description also contained a street address and the parcel number of the residential lot. We note that the legal description also contained the parcel number of the vacant lot. A quick glance at the document, therefore, might indicate that it describes the residential and vacant parcels. The "Survey Affidavit" suggests, however, that the Fraziers did not intend to encumber the vacant parcel.
{¶ 68} Consequently, we believe that genuine issues of material fact exist as to whether the parties were mutually mistaken as to the property intended to be encumbered by the mortgage. We do not believe that reasonable minds could only conclude that appellant was inexcusably negligent. Instead, the summary judgment materials fail to show that appellant's conduct was anything more than simple negligence.
{¶ 69} In conclusion, we again note that appellant's second assignment of error asserted that the trial court erred by granting the appellee's motion for summary judgment on appellant's claim to reform the mortgage. Based upon the foregoing reasons set forth in this opinion that genuine issues of material fact do exist as to a mutual mistake, we sustain appellant's second assignment of error and reverse the trial court's judgment.
{¶ 70} With respect to appellant's first assignment of error that asserts the trial court erred by overruling appellant's motion for summary judgment to reform the mortgage, we again point out that, although we have determined that genuine issues of material fact do, in fact, exist, we do not conclude that the trial court erred by failing to grant appellant's motion for summary judgment. Rather, the existence *331 of genuine issues of material fact require that we overrule this assignment of error, but recognize that this matter will be remanded to the trial court for further proceedings consistent with this opinion.
II
{¶ 71} In its third assignment of error, appellant argues that the trial court erred by denying its motion to substitute Mrs. Frazier's estate and by dismissing its claims against Mrs. Frazier. Appellant recognizes that it filed the motion to substitute outside of the Civ.R. 25(A) ninety-day time frame, but asserts that the trial court should have permitted it to substitute the correct party outside of the ninety-day period under the authority of Civ.R. 6(B). Appellant contends that under Civ.R. 6(B), the court could permit the substitution to occur outside of the ninety-day period upon a showing of excusable neglect. Appellant thus alleges that it did not file the motion within ninety days due to excusable neglect. Appellant claims that the parties were engaged in settlement negotiations for several months and, thus, its decision not to seek substitution was reasonable under the circumstances.
{¶ 72} Civ.R. 25(A)(1) provides:
If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and shall be served on the parties as provided in Civ.R. 5 and upon persons not parties in the manner provided in Civ.R. 4 through Civ.R. 4.6 for the service of summons. Unless the motion for substitution is made not later than ninety days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.
{¶ 73} A party who fails to file a motion to substitute within the ninety-day time frame "may move for an enlargement of time pursuant to Civ.R. 6(B)." Perry v. Eagle-Picher Industries, Inc. , 52 Ohio St.3d 168, 172, 556 N.E.2d 484 (1990) ; Kraus v. Kraus , 6th Dist. Erie No. E-15-012, 2016-Ohio-972, 2016 WL 936896, ¶¶ 20-21, citing Markan v. Sawchyn , 36 Ohio App.3d 136, 521 N.E.2d 824 (8th Dist.1987). Civ.R. 6(B) states:
When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Civ.R. 50(B), Civ.R. 59(B), Civ.R. 59(D), and Civ.R. 60(B), except to the extent and under the conditions stated in them.
{¶ 74} The excusable neglect standard of Civ.R. 6(B) is similar to the excusable neglect standard under Civ.R. 60(B), but it is not as "stringent." State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs. , 72 Ohio St.3d 464, 466, 650 N.E.2d 1343 (1995) ; accord Lang v. Enervest Energy Institutional Fund XI A LP , 4th Dist., 2016-Ohio-4844, 68 N.E.3d 179, ¶ 25. "The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful of the admonition that cases *332 should be decided on their merits, where possible, rather than procedural grounds." Lindenschmidt , 72 Ohio St.3d at 466, 650 N.E.2d 1343, citing Marion Production Credit Assn. v. Cochran , 40 Ohio St.3d 265, 271, 533 N.E.2d 325 (1988) ; accord Duffy v. Nourse Family of Dealerships-Chillicothe, Inc. , 4th Dist. Ross No. 05CA2846, 2006-Ohio-2057, 2006 WL 1086248, ¶ 11. " 'Indicators of whether neglect was excusable in a particular instance include whether the opposing party was prejudiced by the delay, the relative length of the delay, and whether the opposing party filed its own materials in a timely matter.' " Lang at ¶ 25, quoting Duffy at ¶ 11.
{¶ 75} Reviewing courts generally will not reverse trial court decisions regarding excusable neglect under Civ.R. 6(B)(2) absent an abuse of discretion. Lang at ¶ 22, citing Huffer v. Cicero , 107 Ohio App.3d 65, 74, 667 N.E.2d 1031 (4th Dist.1995), citing Miller v. Lint , 62 Ohio St.2d 209, 404 N.E.2d 752 (1980) and McDonald v. Berry , 84 Ohio App.3d 6, 616 N.E.2d 248 (8th Dist.1992). "Accordingly, we must uphold the trial court's decision so long as the trial court did not act unreasonably, unconscionably, or arbitrarily. Furthermore, in applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court." Lang at ¶ 22 (citations omitted).
{¶ 76} Although trial courts possess discretion when determining whether excusable neglect under Civ.R. 6(B) exists, "[a] court should proceed with the understanding that it is preferable to decide cases on their merits rather than on procedural grounds." First Union-Lehman Bros.-Bank of Am. Commercial Mtge. Tr. v. Pillar Real Estate Advisors, Inc. , 2nd Dist. Montgomery No. 2010-CV-9039, 2014-Ohio-1105, 2014 WL 1339610, ¶ 15, citing Bugoni v. C & M Towing , 10th Dist. Franklin No. 12AP-62, 2012-Ohio-4508, 2012 WL 4503044, ¶ 5 ; accord Perry , 52 Ohio St.3d at 170, 556 N.E.2d 484, quoting Staff Note to Civ.R. 1(B) (noting that "[t]he spirit of the Civil Rules" place " 'emphasis * * * upon liberal construction rather than upon technical interpretation' "); Young v. Merrill Lynch, Pierce, Fenner & Smith, Inc. , 88 Ohio App.3d 12, 16, 623 N.E.2d 94 (8th Dist.1993) ; accord Brumley v. Adams Cty. Hosp. , 4th Dist. Adams No. 476, 1989 WL 62858 (June 2, 1989), *3.
{¶ 77} In the case sub judice, the trial court denied appellant's motion to substitute with respect to Mrs. Frazier based upon its finding that appellant did not file its motion for substitution within the Civ.R. 25(A)(1) ninety-day time period. It is not clear, however, whether the trial court recognized that it could extend the time under Civ.R. 6(B) if appellant established excusable neglect. Here, the trial court's decision did not refer to Civ.R. 6(B) and did not find that appellant failed to establish excusable neglect. Rather, the court stated that it found appellant's motion to substitute "is not timely and is not well taken." We thus are unable to determine whether the court employed the correct legal standard. While we ordinarily presume the regularity of trial court proceedings, we may remand a matter when the record indicates that a court may not have applied the correct legal principles. See State ex rel. Cincinnati Enquirer v. Lyons , 140 Ohio St.3d 7, 2014-Ohio-2354, 14 N.E.3d 989, ¶ 35, quoting State v. Phillips , 74 Ohio St.3d 72, 92, 656 N.E.2d 643 (1995) (stating that courts presume regularity " 'unless the record demonstrates otherwise' "); Savage v. Savage , 4th Dist. Pike No. 15CA856, 2015-Ohio-5290, 2015 WL 9260564, ¶ 23 (stating that "in the absence of evidence to the contrary, we presume the regularity of the trial court proceedings and presume that the trial *333 court properly applied the law to the facts of the case"). We therefore remand this matter to the trial court so that it can reconsider appellant's motion to substitute in light of Civ.R. 6(B). See generally McIntosh v. Shupert , 12th Dist. Warren No. CA84-04-024, 1985 WL 8158 (Feb. 4, 1985), *3 (determining that trial court erred by failing to consider issue of excusable neglect and reversing and remanding matter so trial court could consider whether party established excusable neglect).
{¶ 78} Accordingly, based upon the foregoing reasons, we sustain appellant's third assignment of error. Consequently, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
Hoover, P.J. & Harsha, J.: Concur in Judgment & Opinion

On December 5, 2016, the trial court granted appellant's motion to substitute PNC Bank in place of National City Real Estate Services LLC.

We observe that Mrs. Frazier is now deceased, is no longer a party to this case, and that the trial court did not enter judgment against Mrs. Frazier regarding appellant's foreclosure claim. Thus, our decision will not refer to the Fraziers as the appellees. Instead, our decision will refer to Mr. Frazier as the appellee.

A "legal description" of real property "means a description of the property by metes and bounds or lot numbers of a recorded plat including a description of any portion of the property subject to an easement or reservation, if any." R.C. 5313.01(E).

We observe that National City named the Fraziers' children (Lisa J. Wells and Darin L. Frazier) in its amended complaint, and that the trial court did not expressly determine National City's claim against them, or the other parties named in the amended complaint. The trial court's judgment under appeal, however, includes Civ.R. 54(B) language so as to render its decision a final, appealable order.

Although the Ohio Supreme Court has yet to explicitly adopt the Restatement view, we note that the court cited it with approval in a prior case. State ex rel. Walker v. Lancaster City School Dist. Bd. of Edn. , 79 Ohio St.3d 216, 221, 680 N.E.2d 993 (1997) (discussing mutual mistake and noting that school board acted in good faith).